The People of the State of New York v. The Merchants and Mechanics' Bank of Troy, Respondent.

In the Matter of the Petition of the Chemical National Bank, Appellant.

The C. N. Bank, having received from a customer of the M. and M. Bank a check upon that bank, sent it to the drawee for payment; the M. and M. Bank charged the check to the drawer, whose account was then good for the amount, and returned the check to the drawer as paid; it sent to the C. N. Bank a draft on a New York bank for the amount of the check; two days after the M. and M. Bank closed its doors and a receiver of its assets was appointed; the draft was not paid. On application by the C. N. Bank for an order requiring the receiver to pay the amount of the check, upon the ground that the assets came to the hands of the receiver impressed with a trust in favor of the C. N. Bank, *held*, that the order was properly denied; that in order to authorize the relief prayed for it was necessary to trace into the hands of the receiver money or property which belonged to the C. N. Bank, or which had, before the receivership, been set apart and appropriated to the payment of the check; that charging said check and returning it to the drawer did not amount to a payment and setting apart of sufficient of the drawer's deposit to cover it, nor did it impress a special trust on any part of the drawer's assets; but by the transaction the drawee simply reduced its indebtedness to its depositor to the amount of the check, and constituted itself a debtor to the holder to a corresponding amount.

*In re Le Blanc* (14 Hun, 8), distinguished.

(Argued September 16, 1879; decided September 30, 1879.)

Appeal by the Chemical National Bank of New York from an order of the General Term of the Supreme Court, in the third judicial department, affirming an order of Special Term which denied the petition of said bank for an order directing the receiver of the Merchants and Mechanics' Bank of Troy to pay to petitioners, out of the assets in his hands, the amount of a check drawn by the Troy and Boston Railroad Company upon said Merchants and Mechanics' Bank.

The Troy and Boston Railroad Company kept a deposit account with the Merchants and Mechanics' Bank of

Troy, and made weekly payments to the New York Central and Hudson River Railroad Company, by its checks on said bank, which were deposited in the Chemical Bank of New York city. The course of business between the two banks was for the Chemical Bank, on Saturdays, to mail such checks to the Merchants and Mechanics' Bank, which that bank received on Mondays, and on Tuesdays remitted therefor to the Chemical Bank by drafts on the Metropolitan Bank of New York. Accordingly, on Saturday, October 26, 1878, the Chemical Bank mailed such a check for $48,555.62; it was received by the Merchants and Mechanics' Bank on the following Monday, and at once charged to the drawer's deposit account, and the same day delivered to the drawer with its pass-book. After banking hours of that day the Merchants and Mechanics' Bank received from the Chemical Bank a telegram, " Do you remit to-day for check sent you Saturday? If not, return check to us to-night; " and answered, " We expect to remit to-morrow, as usual; " the Chemical Bank replied, " Protest and return check sent Saturday if you don't remit to-night." The next day (29th) the Merchants and Mechanics' Bank remitted by draft; the Chemical Bank received the draft early Thursday morning. The deposit account of the Troy and Boston Railroad Company was good for the check. The draft was not paid. The doors of the Merchants and Mechanics' Bank were closed October 31, 1878, and a receiver of its assets was appointed.

*Charles Jones,* for appellant. The Merchants and Mechanics' Bank was the agent of the Chemical National Bank to hold any moneys paid on account of the check sent to it for collection. (*Mont. Co. Bk.* v. *Albany City Bk.,* 7 N. Y., 459.) The Merchants and Mechanics' Bank received the money as a trustee to forward it to the petitioner and if it mixed it with its own assets it could not thus change its position as trustee, or take away from the petitioner's property the impress of the trust. (2 Perry on Trusts, §§ 345, 463, 828, 837; Hill on Trustees, 376, note 2; *In re Pet. Le Blanc,*

14 Hun, 8.)    It came into the hands of the receiver charged with this trust.    (*Le Roy* v. *Globe Ins. Co.* 2 Edw. Ch., 656, 657, 672; Story's Eq., § 1038.)

*John B. Gale*, for respondent.    The deposit account was not a trust fund but a common debt of the bank, payable only from its general funds.    (46 N. Y., 82; 71 id., 325.) The mixture of the proceeds of the check with the general funds of the bank is fatal to the petitioner's claim.    (*In re West of Eng. and S. Wales Dist. Bk.*, 40 L. T. [N. S.], 712; Alb. L. J., Aug. 23, 1879.)    The Troy and Boston Railroad Company was a mere creditor of the Merchants and Mechanics' Bank to the extent of its deposits.    (*In re Franklin Bk.*, 1 Paige, 249; *Chapman* v. *White*, 6 N. Y., 412; *Marsh* v. *Oneida Cent. Bk.*, 34 Barb., 298; *Carroll* v. *Cone*, 40 id., 220; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y., 82.) When deposits of its moneys were made in the bank the money became that of the bank and it thereafter occupied merely the relation of a creditor to the bank.    (*Chapman* v. *White*, 6 N. Y., 412; 46 id., 82; *Atty.-Gen.* v. *Cont. L. Ins. Co.*, 71 id., 325.)    The rule that a trust fund may be followed, although its nature is changed by using it in purchases of other property, applies only so long as the identical trust fund can be traced.    (Story's Eq. Jur., § 1259; Thompson's Appeal, 22 Penn., 16.)

Rapallo, J.    To entitle the petitioner, the Chemical Bank, to the relief prayed for, it was necessary to trace into the hands of the receiver, money or property which belonged to the Chemical Bank, or which had, before the receivership, been set apart and appropriated to the payment of the check held by the Chemical Bank, so as to constitute a trust fund, the equitable title to which was vested in the last-named bank.    It is conceded that if the Chemical Bank was merely a creditor of the Troy Bank, it could not claim a preference over other creditors, whatever may have been the origin of the claim.

The facts relied upon by the appellant as establishing that the assets of the Troy Bank came to the hands of the receiver impressed with a trust in favor of the Chemical Bank, to the amount of $48,555.62, are, that when the check for that sum, drawn by the Troy and Boston Railroad Company, was sent to the Troy Bank by the Chemical Bank, through the mail, for the purpose of being paid, and was received by the Troy Bank, that bank debited the check to the drawer, in its account, which was then good for the amount, and returned the check to the drawer as paid. The counsel for the appellant contends that charging the check to the drawer in its account with the bank, and returning the check to the drawer as paid, amounted to a payment of the check and the setting apart of a sufficient amount of the drawer's deposits to cover the check. That by sending the check to the Troy Bank through the mail, the Chemical Bank constituted the Troy Bank its agent to collect the check, and to hold the proceeds and send them to the Chemical Bank. That, consequently, the Troy Bank, having paid the check to itself as agent of the Chemical Bank, held the amount so paid on the check, or set apart for its payment, in trust for the Chemical Bank, and the assets of the Troy Bank embraced the amount so held in trust, and passed to the receiver impressed with that trust.

We are unable to concur in the reasoning, or result of this ingenious argument. There was no actual setting apart or appropriation of any specific fund or property of the bank, or of the drawer, for the payment of the check. It is not claimed that the identical funds which had been deposited by the drawer, and on which deposits the credit on the books was founded, were in the possession of the bank, when the check was presented for payment. It is conceded that they were not, and that the bank had used them in its business, and converted them into securities or investments. The bank was simply debtor to the depositor for the balance of deposits which stood to its credit. By charging the check in account, the bank reduced its indebt-

edness to the depositor by the amount of the check, and constituted itself debtor to the holder of the check to a corresponding amount. It did not undertake to provide for the check by setting apart or appropriating any particular property or fund for that purpose, but by drawing a draft upon the Metropolitan Bank of New York, and remitting that draft to the Chemical Bank. It certainly assumed the payment of the check, but there is an entire failure to show that it impressed a special trust on any of its assets for that purpose. The learned counsel contends that the Troy Bank was agent of the Chemical Bank to receive payment of the check. Suppose it were, what did it receive as such payment? Simply its own obligation. If anything was set apart by charging up the check, it was only so much of the bank's indebtedness to its depositor. It constituted itself debtor to the holder of the check in place of its indebtedness to its depositor. But it is rather metaphysical to argue that any such agency was created. The check was sent by mail to the bank upon which it was drawn, for payment, not for collection. True the holder entrusted the bank with the custody of the check until it should be paid. But that is done every time a check is presented over the counter for payment. The only difference in this case is that instead of standing at the counter, or sending some one to stand there to receive payment, the holder requested the bank to remit by mail. In paying the check the bank merely complied with its own obligation to its depositor to honor checks drawn against deposits, and if, instead of demanding immediate payment, the holder of the check trusted to the bank to remit, the result was simply to give credit to the bank; not to constitute an agency. The *Matter of Le Blanc* (14 Hun, 8), is referred to as sustaining the claim of the petitioner. That was a border case, but it contains the element which is wanting in the present case, of a specific appropriation of a particular fund, for the payment of the petitioner's claim. In that case the Erie Railway Company had separated from its general assets, and deposited with Duncan,

Sickels — Vol. XXXIII. 35

Sherman & Co., a sum of money for the specific purpose of paying the dividends due to the petitioner. That fund while in the hands of Duncan, Sherman & Co., was clearly impressed with a trust in favor of the petitioner, and it was held that it was not discharged of the trust by being replaced in the possession of the Erie Company, and that the receiver took it, though mingled with other funds, subject to the same trust. To make this case analogous it would be necessary to show that the Troy Bank had separated from its general assets, and placed in the hands of some depositary, a sum sufficient to pay the check, for the express purpose of being so applied, and that this fund had come to the hands of the receiver in some form. There is no approach in this case to any such state of facts. All that appears is that the holder of the check sent it by mail to the bank upon which it was drawn, and requested that bank to remit by a certain time, or return the check, which it failed to do within the time specified, but that it did remit a day or two later, in a draft which was not paid, and in the meantime charged the check to its depositor as paid, the depositor's account being good for the amount. It is impossible out of these facts to construct an appropriation or trust which would attach to the general assets of the bank afterwards passing to a receiver, and require their application to the payment of the check in preference to all other indebtedness of the bank.

The order should be affirmed.

All concur.

Order affirmed.