# THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF, v. THE BANK OF DANSVILLE, DEFENDANT.

*Draft received by a bank for collection — when the sender is entitled to the amount collected in preference to the general creditors — a receiver will be directed to make payment on a summary application.*

On March 15, 1884, the firm of Enger & Co., doing business in Cincinnati, being then creditors of one Hampton, who resided in Dansville in this State, to the amount of $213.75, drew their sight draft on him for that sum payable to the order of the cashier of the Bank of Dansville, and sent the same to the said bank for collection with specific instructions to remit the proceeds. On April fifteenth the draft was paid in full to the bank, which, on the next day, drew its own draft for the amount of the collection less charges, on a New York bank, payable to the order of Enger & Co., and forwarded the same to them. The draft was forwarded by them for collection but was returned dishonored. The Bank of Danville was at this time insolvent, and ceased to do business within a few days.

*Held,* that the firm of Enger & Co. was entitled to have the amount of the draft so collected by the bank, paid to it by the receiver in preference to the general creditors.

That as the funds in the hands of the receiver were *custodia legis* it was unnecessary for the petitioners to file a bill for the purpose of establishing their equity, and that their claim was properly directed to be paid on a summary application by petition.

APPEAL from an order of the Monroe County Special Term reqniring the receiver of the Bank of Dansville to pay $226.02 to the petitioner, George Enger & Co., in preference to the general creditors of the bank.

This bank was organized under the general banking laws of this State, and being insolvent a receiver was appointed of its assets. The other material facts are stated in the opinion. From the above mentioned order the receiver appealed.

*Martin W. Cook*, for the receiver Whiteman, appellant.

*Charles J. Bissell*, for the claimant Enger, repondent.

BARKER, J.:

The firm of George Enger & Co., doing business in Cincinnati, were creditors of one Hampton, who resided in the village of Dansville in this State, where the bank of Dansville was located, and they on the 15th of March, 1884, drew their sight draft on him for the sum of $213.75, payable to the order of Luther Grant, the cashier of the bank. The drawers sent the same to the bank for collection with specific instructions to remit the proceeds. On the 15th of April, 1884, the draft was paid in full to the bank. On the next day the bank drew its own sight draft for the amount of the collection less charges, on the Seventh Ward National Bank, New York, payable to the order of George Enger & Co., and forwarded the same to them, which they immediately on its receipt forwarded for collection and the same was returned dishonored. The bank of Dansville was at this time insolvent and closed its doors and ceased to do business within a day or two thereafter, and the appellant was in a judicial proceeding appointed receiver. The claimants had no prior dealings with the bank.

The instructions given by the drawer of the draft constituted the bank their collecting agent and no other relation than that ever existed between them. (*Montgomery County Bank* v. *Albany City Bank*, 7 N. Y., 459.) The title to the moneys collected by the bank in payment of the draft was in the drawers, as much so as was the obligation which they held against Hampton. When the latter paid over to the bank the amount of his debt, it became the bailee or trustee of the fund, but in no sense the owner. Nothing can be gathered from the letter of instructions indicating that it was the inten-

tion of the drawers that the bank should become their debtor for the avails of the draft, or that the title to the money should pass to them for any purpose. On the contrary the instructions were most specific that the proceeds should be remitted to them immediately. The particular mode of making the remittance was not mentioned, so the bank, under the general authorization contained in the letter of instructions, could adopt any of the usual and customary modes of remittance in use by banks or business men at that place. It could have purchased a draft of some third party, on some bank or banker, in the usual course of business, and if it had used the money for that purpose, and in good faith, it would have been an act within the limits of its agency. But it was not authorized to use the funds and send its own draft on its own correspondent as a means of payment. It could not in that way discharge the duties it owed to its principal. Until its own draft was paid the transaction would not amount to a remittance. The relation which the parties held towards each other, and the duty which the bank assumed on receipt of the draft for collection, rests on principles of law so elementary that an attempt at illustration seems superfluous. It may be said, however, that when a bank consents to act as a collecting agent it assumes precisely the same duties and obligations towards its principal as an individual does when he acts in the same capacity. This case is readily distinguishable from the case of *The People* v. *The Merchants and Mechanics' Bank* (78 N. Y., 269), cited by the learned counsel for the receiver. The facts are dissimilar and nowise the same in effect. In that case the depositor with the bank became its creditor in the usual course of business, and drew out the deposits on its own checks, at its convenience, with a view of paying its obligations to third parties. The circumstances were such that the court held that the bank became a debtor to the depositor. Thereafter the depositor drew its own check on the bank in favor of a third party, who, on receipt of the same, sent it forward for payment. The bank on receipt of the check charged the amount to the drawer's account and surrendered up the check to the drawer and then forwarded its own draft to the payee of the check as the mode of making the remittance. The draft was never paid, and the bank being insolvent a receiver was appointed of its assets, and it was held, as the check was sent forward for payment

and not for collection, and as the bank had not received, in any sense, money on the check for the payee of the draft, and as no fund had been set apart and appropriated by the bank for the payment of the check, so as to constitute a trust fund, that by the transaction the payee of the check became *pro tanto* a creditor of the bank in the place of the original depositor.

The general rule, as established by the authorities on the subject, may be stated as follows : Where one person receives into his hands the funds of another, he is deemed to hold them in a fiduciary capacity, such as bailee or trustee, unless they were so received with the understanding, express or implied, that the same should be turned into a debt. (*Libby* v. *Hopkins*, 104 U. S., 307; *Rose* v. *Hart*, 8 Taunt., 499; *People* v. *City Bank of Rochester*, 96 N. Y., 32.) The receiver of the bank, as its representative, received its assets subject to the same equities and impressed with the same trust under which they were held by it. (*In re Howe*, 1 Paige, 125; *Le Roy* v. *Globe Ins. Co.*, 2 Edw., 657; *In re Le Blanc*, 14 Hun, 8; *People* v. *City Bank of Rochester*, 96 N. Y., 32.) If the identical moneys collected by the bank did not pass into the hands of the receiver it makes no difference, for in some shape or form they went to swell the assets which fell into his hands.

In *Cook* v. *Tullis* (18 Wall., 332) the rule is laid down as follows : " It is a rule of equity jurisprudence, perfectly well settled and of universal application, that where property held upon any trust to keep or use, or invest in a particular way, is misapplied by the trustee and converted into different property, or is sold and the proceeds are thus invested, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or *cestui que trust.*"

As the funds in the hands of the receiver were *custodia legis*, it was unnecessary for the petitioners to file a bill for the purpose of establishing their equity, and their claim was properly directed to be paid on a summary application by petition. (*In re Le Blanc*, 14 Hun, 8.) As none of the facts set forth in the petition were denied by the receiver in his reply thereto a reference was wholly unnecessary, and besides it does not appear that any was demanded on the hearing at Special Term.

The order appealed from is affirmed, with costs and disbursements to be paid out of the funds in the hands of the receiver.

SMITH, P. J., and BRADLEY, J., concurred; HAIGHT, J., not sitting.

Order affirmed, with ten dollars costs and disbursements to be paid by the receiver out of the trust funds.