(8 App. Div. 205)
### WARREN–SCHARF ASPHALT PAVING CO. v. DUNN.

(Supreme Court, Appellate Division, Third Department.  July 7, 1896.)

TRUSTS—FOLLOWING TRUST PROPERTY.

An insolvent bank, which held two city warrants for collection as agent for plaintiff, surrendered the warrants to the city treasurer, and received therefor his check on another bank for part of the amount, and in satisfaction of taxes due from the bank to the city.  The check was paid in part by the bank on which it was drawn, and the balance by checks on R. & Sons, and a draft on the N. P. Bank.  The checks on R. & Sons were in the possession of the insolvent bank at the time of its failure, and passed to the receiver.  The draft on the N. P. Bank was deposited to the credit of the insolvent bank, and the account was intact when the receiver was appointed.  *Held,* that the funds in the receiver's hands were impressed with a trust in favor of plaintiff to the amount of the check on the N. P. Bank, and also to the amount of the checks on R. & Sons, when anything should be realized thereon, but not as to the amount of taxes satisfied by the city treasurer, or as to the amount of checks exchanged in payment of the city treasurer's check.

Controversy between the Warren-Scharf Asphalt Paving Company, as plaintiff, and George W. Dunn, as receiver of the Merchants' Bank of Binghamton, as defendant, submitted without action, pursuant to Code Civ. Proc. § 1279.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Stimson & Williams, for plaintiff.
Lyon, Painter & Hinman, for defendant.

PARKER, P. J.  The Merchants' Bank held the two city warrants, aggregating $3,133.80, as the agent of the plaintiff to collect and receive the amount due thereon; and, all that it did receive, it, of course, held in trust for this plaintiff.  It surrendered such warrants to the city treasurer, upon whom they were drawn, and in exchange therefor it received two things:  First, the city treasurer's check on the National Broome County Bank for $2,923.94; and, secondly, payment and satisfaction of its own taxes due from it to the city of Binghamton, to the amount of $209.86.  We may assume, I think, as a settled rule of equity, that just so far as the above items, or their proceeds, were included in the assets of the Merchants' Bank that passed to the possession or control of this defendant as its receiver, a trust in favor of the plaintiff may be impressed upon them, and just so far as they, or their avails, can be identified, so far they still belong to the plaintiff, and the receiver must account to it for that amount.    Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Holmes v. Gilman, 138 N. Y. 376, 34 N. E. 205.    It seems clear, as a matter of fact, that, as to the item of $209.86, the bank received nothing from the treasurer, except a satisfaction and discharge of its taxes.  In other words, it used so much of the plaintiff's demand against the city to pay its own debt.  As to the check of $2,923.94, it had disposed of it some time before the receiver was appointed.  But the question is, have any of the avails of that check passed to

the receiver, or can they be traced and identified as forming a part of the assets of the bank that did. pass to him? The check, in effect, was presented to the National Broome County Bank for payment. No money was received on it. But such check, and 10 others, amounting in the aggregate to $3,224.93, were paid by such national bank as follows: First, by surrendering to the Merchants' Bank checks drawn upon it to the amount of $2,338.46. Such checks were drawn by its depositors, and were debts, to that amount, existing against the Merchants' Bank, and the practical effect of such exchange was to pay so much of the bank's debts. Secondly, by transferring to the Merchants' Bank checks owned by the National Bank, drawn upon E. Ross & Sons, to the amount of $353.24. Such checks were held by the Merchants' Bank at the time its doors were closed, and passed to the receiver as part of its assets. No part of such amount has as yet been collected by the receiver. Lastly, for the balance of such claim against the National Bank, of $3,224.93, the Merchants' Bank received a draft on the National Park Bank of New York for the sum of $533.05. Now, what of these items received by the Merchants' Bank from the National Bank can be traced into the assets which passed to the receiver? As to the checks drawn against E. Ross & Sons, it is plain that they are a part of such assets; and upon them would seem to be impressed a trust in favor of the plaintiff, within the rule above stated. Whatever the receiver collects upon those demands should be accounted for to the plaintiff. As to the item of $2,338.46, the checks which constituted it were but vouchers, in the hands of the Merchants' Bank, of the payment by it of so much of its debts. Each check was charged up against its drawer on the books of the bank, and so much of the bank's indebtedness to each was thereby discharged. People v. St. Nicholas Bank, 77 Hun, 159, 28 N. Y. Supp. 407. But nothing came to the bank that could constitute an asset. Nothing was thereby received that could pass to the receiver.

But it is claimed on the part of the plaintiff that by thus using the city treasurer's check, which belonged to the plaintiff, to pay its own debts to its depositors, the Merchants' Bank saved just so much of the cash that was then in its vaults. It appears that it had at that time upwards of $3,000 cash on hand, and the claim is that by using this check it saved using that cash, and that, therefore, so much of the cash on hand as equals the amount of the check so used may be fairly said to be the avails or proceeds of such check. I cannot agree with that proposition. Suppose the Merchants' Bank had received from the National Broome County Bank, upon the treasurer's check, $2,338.46 in cash. That money would have belonged to the plaintiff. If subsequently the bank used such money to purchase a security, or to discount a note, or to pay an overdraft upon it, the security, note, or claim which would accrue to the bank, for such use, would be impressed with a trust in favor of the plaintiff; but, if it used it merely to pay and discharge its own indebtedness, it received nothing whatever upon which a trust could be impressed. It is important to understand that, as to this item, nothing whatever was brought back to the Merchants' Bank for the

benefit of the plaintiff.   No cash was put in its safe.   None was set apart or appropriated to the payment of the plaintiff's claim.   It is not a case where the plaintiff's funds were mingled with those of the bank, but a case where the plaintiff's money is plainly traced to the payment of the bank's debt.   If we should go to the extent of saying that the money in its safe should be impressed with a trust to the extent of the fund so used, it certainly could not be upon the theory that it was the avails or proceeds of such fund, or that it had been produced from it; for plainly such money was not acquired from, and never had any connection whatever with, such fund. And, if the rule should be so far extended, there does not seem to be any reason why the trust should not be impressed upon any property belonging to the bank; for not only was its money, but so, also, were all its assets, relieved from the burden of paying the debts which the plaintiff's money was used to discharge.   The result would be that, in all cases where a trustee's assets are insufficient to pay all its debts, the beneficiaries, no matter how many there were, would have a preference over all other creditors upon all the assets of the insolvent.   But such is not the rule.   In the distribution a beneficiary is entitled to no preference, except so far as he can trace and identify his own fund or the plain avails of it.   People v. Merchants' & Mechanics' Bank of Troy, 78 N. Y. 269.   To that extent, he may justly claim a preference.   Beyond that, there is no reason apparent to me why he should be given any.   In accordance with this view, so much of the treasurer's check as was used to pay the various checks drawn by its depositors upon the Merchants' Bank, viz. the sum of $2,338.46, forms no part of the assets, which passed to this defendant as receiver, and the plaintiff has no right to be preferred for the same.

As to the draft for $533.05, drawn upon the National Park Bank of New York, it was deposited to the credit of the Merchants' Bank, in the American Exchange Bank, and at once became part of its assets.   From the time of such deposit up to the time defendant was appointed receiver, the account of the Merchants' Bank, in the American Exchange Bank, remained intact.   It was increased somewhat by additional credits, but in no respect was it diminished. When the receiver was appointed, he took such account as part of the bank's assets.   I think we are justified in concluding that the whole amount of such draft formed a part of the account that so passed to the receiver.

The Merchants' Bank paid to the National Broome County Bank $2,338.46 of its indebtedness, as above stated.   It paid $301 of this amount with 10 checks which belonged to itself, and for the balance, $2,037.46, it used the funds of this plaintiff.   The whole amount of the plaintiffs' funds which it then had was $2,923.94, and the balance remaining after such payment was $886.48.   For this amount it received the checks against E. Ross & Sons, $353.42, and the draft on the National Park Bank of New York for $533.05.   Such last two items appear to have been among the assets of the bank, as already shown, and upon them a trust is impressed in favor of the plaintiff.

My conclusion is that the defendant should pay to the plaintiff the sum of $533.05 from the amount received by him from the American Exchange Bank; also, that he account for, and pay over to the plaintiff, all that he collects upon the checks against E. Ross & Sons, which were received by him as above stated; and that, as to all the balance of the fund which the Merchants' Bank held in trust for the plaintiff, the plaintiff is not entitled to any preference thereon, but must share equally wih all other creditors in the final distribution of its assets. No costs are allowed to either party in this proceeding.    All concur.