[L. A. No. 15318. In Bank.—June 23, 1937.]

GERTRUDE WIECZOREK, Respondent, v. EDWARD RAINEY, as Superintendent of Banks, etc., Defendant; FRIEND W. RICHARDSON, as Superintendent of Banks, etc., Appellant.

Clock, McWhinney & Clock, Merritt D. Jergins and John G. Clock for Appellant.

Victor Ford Collins for Respondent.

NOURSE, J., *pro tem.*—Plaintiff, as owner of certain street bonds, delivered matured coupons to the city treasurer, and received from him his check drawn upon the bond funds which he had deposited in his commercial account with the Bank of Balboa. Plaintiff endorsed and deposited the check in her account with the Farmers and Merchants National Bank of Los Angeles. This bank endorsed and delivered the check to the Federal Reserve Bank of San Francisco, which forwarded it by mail to the Bank of Balboa for payment along with other checks drawn on the latter bank. On the same day that these checks were received, the Bank of Balboa drew its draft for the full amount on the Security-First National Bank of Los Angeles, mailed the draft to the Federal Reserve Bank, charged the city treasurer's check to his account in the bank and marked the check paid. On the following day the superintendent of banks closed the Bank of Balboa, and the Security-First National Bank of Los Angeles refused payment on the draft. The Federal Reserve Bank assigned its interest to the extent of the check to plaintiff, and she presented her claim to defendant, demanding a preference over general creditors of the Balboa bank. In the ac-

tion on the claim plaintiff had judgment granting such preference. The cause was tried on an agreed statement of facts, with findings waived, and the appeal presents the single question whether the plaintiff is anything more than a general creditor to whom no preferential payment should be allowed.

As a part of the statement of facts it was stipulated that "The said Federal Reserve Bank did not demand payment of said items by said Bank of Balboa in cash. It was and is the ordinary, regular and customary course of banking business that settlement be made under such circumstances by draft, and the said Federal Reserve Bank of San Francisco, Los Angeles Branch, intended and expected settlement from said Bank of Balboa in accordance with the usual practice." Upon these facts the appellant argues that the relation of debtor and creditor arose between the collecting bank and the holder of the paper because the latter entered into the transaction in contemplation of the ordinary course of the banking business which called for payment by draft drawn by the collecting bank when payment in cash was not specifically demanded; that this course of business required the extension of credit between the banks and the periodic settlement or clearance of mutual indebtedness through drafts drawn in this manner; and that the relation of trusteeship for which respondent contends is the unusual and neither the ordinary nor the customary course of the banking business.

Accepting appellant's theory as the sound and reasonable one, we must look to the respondent to carry the burden of showing that the circumstances of this case are such that a trust relation would arise rather than one of debtor and creditor. To this end, the respondent emphasizes the fact that the check of the city treasurer was marked paid by the Balboa bank and that there was presumably taken from his account the face of the check through which transaction the funds of the bank were augmented to such an extent that a trust fund should be deemed created with the collecting bank as trustee. The authorities are not in accord on this theory and, though some of the later cases support the theory, the great weight of authority is the other way. Many of the cases which recognize this trust fund theory have denied its application on the facts because it did not appear that the assets of the collecting bank had been augmented by the transaction. Without citing all the authorities

by name, it can be said that the decided cases are almost uniform in holding that there can be no trust relation unless there has been an augmentation of the bank assets. *Allied Mills, Inc.,* v. *Horton,* 65 Fed. (2d) 708 [90 A. L. R. 1]; *People* v. *Merchants' & Mechanics' Bank,* 78 N. Y. 269, 272, 273 [34 Am. Rep. 532]; *Hirning* v. *Federal Reserve Bank,* 52 Fed. (2d) 382 [82 A. L. R. 297]; *Amberg Schwab & Co.* v. *Commercial State Bank,* 137 Kan. 902 [22 Pac. (2d) 442], state the rule. In the Allied Mills case the court said that the reason generally assigned for denying a trust in such cases is that there is merely a transfer of existing assets of the bank from one to another and not an augmentation of the assets of the bank. In *People* v. *Merchants' & Mechanics' Bank, supra,* the court in discussing a similar transaction said: "There was no actual setting apart or appropriation of any specific fund or property of the bank, or of the drawer, for the payment of the check. . . . The bank was simply debtor to the depositor for the balance of deposits which stood to its credit. By charging the check in account, the bank reduced its indebtedness to the depositor by the amount of the check, and constituted itself debtor to the holder of the check to a corresponding amount. . . . If anything was set apart by charging up the check, it was only so much of the bank's indebtedness to its depositor. It constituted itself debtor to the holder of the check in place of its indebtedness to its depositor. But it is rather metaphysical to argue that any such agency was created. The check was sent by mail to the bank upon which it was drawn, for payment, not for collection. True, the holder entrusted the bank with the custody of the check until it should be paid. But that is done every time a check is presented over the counter for payment. The only difference in this case is that instead of standing at the counter, or sending some one to stand there to receive payment, the holder requested the bank to remit by mail. In paying the check the bank merely complied with its own obligation to its depositor to honor checks drawn against deposits, and if, instead of demanding immediate payment, the holder of the check trusted to the bank to remit, the result was simply to give credit to the bank; not to constitute an agency."

A fair and clear summarization of the conflicting views is found in Michie on Banks and Banking (1931), volume 3,

page 315, where the author says: "Though there is some conflict in the cases, yet by the great weight of authority, an unaccepted check or sight draft on a bank does not operate as an assignment of the drawer's deposit at law or in equity, and upon insolvency of the bank the holder of the draft or payee must share *pro rata* with other creditors, unless he can trace into the hands of the receiver money or property which belongs to the drawer, or which had, before the receivership, been set apart and appropriated to the payment of the check, so as to constitute a trust fund. Nor does the mere charging the check to the drawer in his account with the bank and returning the check to the drawer as paid, amount to a payment of the check and appropriation of a specific fund or property of the bank or of the drawer for the payment of the check. By charging the check in the account, the bank merely reduces its indebtedness to the depositor by the amount of the check, and constitutes itself debtor to the holder of the check to a corresponding amount. And it makes no difference whether the check is sent by mail to the bank upon which it is drawn, or is presented over the counter, provided it is sent for payment and not merely for collection." The same author, on page 321, says: "Although probably contrary to the weight of authority, the modern trend of decisions seems to support the rule that where paper is sent for collection and remittance, the collecting bank as agent of the sender holds the amount collected in trust so as to give a right of preference therefor upon its insolvency; and this is true even though the collecting bank collects the paper by charging it against the account of the individual drawer and issues its draft on another bank in favor of the sender for the amount."

Many cases supporting both views are cited by the author, but it is well to note that the real line of distinction is in the facts rather than in the law, the determinative fact being whether the paper is sent for payment or for collection. Here the parties stipulated that the respondent's check was sent to the Balboa bank for payment, and that the Federal Reserve Bank intended and expected settlement in the ordinary, regular and customary course of banking business, which was by draft to be remitted to it by the Balboa bank. There was no relation of agency or trust between these two banks after the draft was drawn and transmitted. By the

transaction the drawer merely reduced its indebtedness to its depositor and constituted itself a debtor to the holder of the draft in a corresponding amount. The latter accepted the credit of the drawer in the ordinary course of the banking business without any evidence of an intention to create a special relation of trusteeship in a specific portion of the bank's assets. When, thereafter, the Federal Reserve Bank assigned its claim to the respondent, she took the same rights which her assignor had, and stood in the position of a general creditor as holder of the bank's draft.

The judgment is reversed.

Langdon, J., Edmonds, J., Curtis, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.