### In re GUBELMAN et al.

### Appeal of JASPER.

(Circuit Court of Appeals, Second Circuit. November 2, 1925.)

No. 55.

**I. Bankruptcy ⊕═140(3)—If bankrupt makes agreed disposition of money intrusted to him, depositor's right to original fund is gone.**

If A. intrusts to B. money for investment in particular manner, and B. makes investment or agreed disposition of money, though he appropriates whatever was produced by that money, A. cannot reclaim original fund, whatever may be his rights to the proceeds of B.'s tortious conversion.

**2. Courts ⊕═372(2)—State decisions held not binding on United States courts in matter of general commercial law.**

Ruling that, if A. intrusts money to B. for investment, and B. makes investment, but appropriates what was produced by it, A.'s right to original fund is gone, is matter of general commercial law, in respect of which state decisions are not binding on United States courts.

**3. Bankruptcy ⊕═140(3)—Transaction held to show no breach of trust by bankrupt.**

Where bankrupts by letter opened with banking house in Germany credit to be paid in dollars in favor of a depositor, transaction *held* in effect issuance of check or order, and, there being no breach of trust, there can be no recovery by way of reclamation or preference.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Oscar L. Gubelman and others, trading as Knauth, Nachod & Kuhne, bankrupts. Petition by Edward W. S. Jasper, demanding that the trustee pay him out of bankrupts' general funds. From an order denying relief, petitioner appeals. Order affirmed.

The bankrupts were brokers and bankers and did a considerable business in foreign exchange. What is commonly called the "transmission of money" to places remote from New York was with them a common transaction. Bankrupts' place of business was New York City. There was a banking house of the same name in Leipzig, Germany. Whether it was a branch of the bankrupt, or a correspondent, is not very clear and is immaterial.

Jasper was a depositor with bankrupts, and had to his credit in his deposit account upwards of $10,000. He wished to go to Germany and there to enjoy the possession of $9,000 in actual currency of the United States; but he was unwilling to draw from bankrupts or otherwise possess himself of this sum in currency and personally carry it across the ocean. He explained what he wanted to the bankrupts, who thereupon wrote a letter to the Leipzig house, stating that at the request of Jasper and for his account "we herewith open with you the following credit No. 7420 for $9,000, to be paid in actual United States dollars in favor of Mr. E. W. S. Jasper."

They furnished a copy of this letter to Jasper, sent one of his specimen signatures to Leipzig, and called the attention of the people there to the fact that Jasper carried with him a letter of credit of designated number for a named amount. This for identification. In consideration of this document Jasper drew his check upon the bankrupts for the sum of $9,090, viz., $9,000 for the order or credit above set forth, and $90 as bankrupts' charge for doing what was done.

Two or three days later Jasper sailed for Europe, and promptly on arrival presented himself at the Leipzig Bank and demanded $9,000. Meanwhile bankruptcy had supervened in New York, Jasper's demand was refused, and he brought this petition in the nature of reclamation, demanding that the trustee pay him out of the general funds of the bankrupts the $9,000 aforesaid. From an order denying relief he brought this appeal.

Furman, Thayer & Vreeland, of New York City (J. Lewis Furman and Marshall N. Thayer, both of New York City, of counsel), for appellant.

Rosenberg & Ball, of New York City (George G. Ernst and Ralph F. Colin, both of New York City, of counsel), for appellee trustee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] We have held, quite plainly as it seems to us, that if A. in-

trusts to B. moneys for investment in a particular manner, but B. does not carry out his undertaking and becomes bankrupt, A. may recover his money out of any fund belonging to B.'s estate into which A.'s money can be traced. The reason for this ruling is that B., by undertaking, as stated, assumed a fiduciary relation to A., and by neglecting to invest as agreed was guilty of a breach of trust. In re Bolognesi, 254 F. 770, 166 C. C. A. 216; In re Jarmulowsky, 258 F. 231, 169 C. C. A. 297; In re Shapiro (C. C. A.) 298 F. 1021. But if B. does make the investment or agreed disposition of A.'s money, and even though he appropriates whatever was produced by that money, A.'s right to the original fund is gone, whatever may be his rights to the proceeds of B.'s tortious conversion. In re Brown, 175 F. 769, 99 C. C. A. 345.

[2] This is a matter of general commercial law, in respect of which the decisions of the states in which the United States courts sit are not binding on the latter (Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865); but the same result in respect of issuance of drafts or the like was reached in Legniti v. Mechanics, etc., Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185, even though a payment by A. to B. in consideration of receiving the latter's draft or its equivalent, is to be regarded, not as an executed sale and transfer, but as an executory contract (Gravenhurst v. Zimmerman, 236 N. Y. 22, at page 26, 139 N. E. 766, 27 A. L. R. 1465).

[3] Therefore the question at bar is primarily one of fact; for if Jasper got a draft, check, or its equivalent, and in so getting received exactly what he asked for and something he thought appropriate for his purpose, he cannot be heard to complain that the bankrupt was his trustee and committed a breach of trust. This question of fact must be answered in the light of all the circumstances.

Jasper had a credit in New York, in the shape of an ordinary deposit account with the bankrupts. He could have realized the cash he wanted out of that account and carried the same in his pocket to Germany. This he did not wish; so he arranged the scheme above outlined, by which he would be entitled to collect 9,000 actual dollars of the United States, as soon as the Leipzig bank identified him.

The machinery of payment was the letter, beginning, "We herewith open with you the following credit," etc., plus the stated means of identification. We think that, in point of fact, this scheme was in effect the issuance of a check or order on Leipzig, payable only to Jasper on demand. If this view of the facts be received, then the transaction was the legal equivalent of handing Jasper a draft against his $9,090; there was no breach of trust, and can be no recovery by way of reclamation or preference.

We point out that all the requisites of a successful reclamation under the cases first above cited must be present, and we discover no proof that the fund proceeded against contains the $9,090 paid by Jasper to bankrupts.

Order affirmed, with costs.

HAND, Circuit Judge (dissenting). If we were prepared to re-examine the rule laid down in Re Bolognesi, 254 F. 770, 166 C. C. A. 216, in Re Jarmulowsky, 258 F. 231, 169 C. C. A. 297, and in Re Shapiro (C. C. A.) 298 F. 1021, it would make no difference whether Jasper got what he bargained for or not. But that rule is authoritative in this court, and the issue is critical. I do not see how it can be said that the bankrupts had performed. Jasper did not ask for a letter of credit but for a dollar credit in Leipzig. If he had wanted the first, the bankrupts would have performed by giving him a letter—it would scarcely have been a copy—introducing him to the Leipzig house, and promising them to honor all drafts drawn on them. That house would be under no obligation to Jasper of any sort or at any time. They would cash his drafts or not, as their relations with the bankrupts dictated; he would have no claim upon them.

But he wanted something quite different, a debt in his favor against the Leipzig house, and that the bankrupts undertook to "establish." Ignoring any difficulty arising from Jasper's not being a party to, but only the beneficiary of, the arrangement, this debt was to be created as follows: The bankrupts in effect were to write to the Leipzig house, asking them to enter a credit upon their books in Jasper's favor. After complying, the Leipzig house would have charged the bankrupts with the amount, and the bankrupts would have credited them and charged Jasper. In fact, probably the bankrupts made the entries at once. It makes no difference whatever, because it was only after the Leipzig house had got the letter, which was sent direct to them, and had made an entry in Jasper's favor, that the bankrupts would have performed their promise to Jasper. Till then he had no dollar credit with the Leipzig house. As this never happened, the case is within the rule of In re Bolognesi.