## GREAT ATLANTIC & PACIFIC TEA CO. v. CITIZENS' NAT. BANK et al.

### No. 2625.

District Court, W. D. Pennsylvania.
Nov. 17, 1932.

John A. Metz and William C. McClure, both of Pittsburgh, Pa., for plaintiff.

Henry Eastman Hackney (of Shelby, Hackney & Ray), of Uniontown, Pa., for defendants.

McVICAR, District Judge.

This is a suit for the purpose of recovering a deposit which the plaintiff claims is held in trust for it. Issues were formed by the bill and answer. The following findings of fact and conclusions of law are made:

### Findings of Fact.

The facts are found as stated in the "Agreed Statement of Facts" of the parties filed herewith.

### Conclusions of Law.

1. The contract between the plaintiff and the Citizens' National Bank did not create an express trust.

2. The bank was not hopelessly or irretrievably insolvent when the deposits of October 3 and 5, 1931, were made, therefore an implied trust did not arise in favor of the plaintiff.

3. The bill should be dismissed at the costs of the plaintiff.

### Opinion.

The Great Atlantic & Pacific Tea Company, plaintiff, is the owner of a chain of stores, several of which are located at or near Vandergrift, Pa. In order to take care of the banking for the stores at or near Vandergrift, plaintiff, in May, 1931, entered into a contract with the Citizens' National Bank of Vandergrift, a National Banking Association, whereby plaintiff agreed to maintain in said bank an open dormant deposit of $2,000. The managers of plaintiff's stores aforesaid were to make daily deposits in said bank. The bank was to remit each day the amount of the daily deposits to the First National Bank of Pittsburgh, Pa. In pursuance of this contract, the dormant deposit of $2,000 was made and maintained. Daily deposits were made by the managers. The amount of the daily deposits was transmitted by draft at the close of each day's business to the First National Bank of Pittsburgh, Pa. The manner in which the remittances were made was known to plaintiff who made no objection thereto. The bank received deposits from the managers aforesaid, after the close of banking business for Saturday, October 3, 1931, and also received deposits from the managers on October 5, 1931. Drafts for the amount of these deposits were mailed to the First National Bank of Pittsburgh, after the close of business October 5, 1931. Before the drafts were received by the First National Bank of Pittsburgh, the Citizens' National Bank suspended business and was placed in the hands of the comptroller of the currency, who afterwards appointed a receiver therefor. The Citizens' National Bank was insolvent when the aforesaid deposits of October 3d and 5th were made, and its financial condition at the time these deposits were received was known by the board of directors and the officers of said bank. During this time negotiations were pending for consolidation with another bank and also for the procuring of additional funds. The futility of these negotiations was not known by the Citizens' National Bank until after the drafts aforesaid were mailed.

Plaintiff contends, under the facts aforesaid, that the bank held said deposits under an express trust in its favor; also that an implied or constructive trust arose from the

receiving of the deposits by the bank while insolvent and with a knowledge of its financial condition at the time the deposits were received. Where a national bank receives money on deposit which is to be mingled with its other assets and become a part thereof, the relation created by the deposit is that of creditor and debtor although the amount represented by the deposit is to be used and applied to a specific purpose. Comment to section 15 of the Trusts Restatement of the American Law Institute, p. 44; Article by the now Mr. Justice Stone of the Supreme Court (then Dean of the Columbia Law School) 21 Columbia L. R. 511, 514, 515; In re A. Bolognesi & Co., 254 F. 770, 772 (C. C. A. 2); Strohmeyer & Arpe Co. v. Guaranty Trust Co. of New York, 172 App. Div. 16, 157 N. Y. S. 955; Beecher v. Cosmopolitan Trust Co., 239 Mass. 48, 131 N. E. 338; In re Gubelman, 9 F.(2d) 486 (C. C. A. 2); Equitable Trust Co. v. First National Bank of Trinidad, Colo., 275 U. S. 359, 48 S. Ct. 167, 72 L. Ed. 313; General Baking Co. v. Gordon, —— F. Supp. ——,[1] Eastern District of Pennsylvania, opinion by Judge Kirkpatrick, October 11, 1932; Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089. In comment to section 15 of the Trusts Restatement of the American Law Institute, it is stated: "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

In 21 Columbia L. R. 507, Mr. Justice Stone stated, p. 511: "Thus one who is permitted to use money entrusted to his care as his own, is liable as a debtor or contractor and not a fiduciary."

And also the same author stated, p. 515: "When the customer pays money to the banker for transmission it would seem that the same principles of interpretation should control. Every consideration which would lead to the conclusion that the collecting banker is a debtor when the collection is complete and there is no stipulation to the contrary would lead to the like conclusion when money is deposited, in the ordinary course of business, for transmission. As has already been pointed out the depositor does not contemplate physical transmission of the money deposited by him. He must contemplate that the payment will be effected in the customary manner and that the money deposited, upon being credited to the customer will be used

by the banker as his own as a part of the common mass of money received from his depositors. The necessary legal conclusion from such an intention, acted upon, is that the banker's obligation is purely contractual, unless it is expressly stipulated that the money is to be set apart as a quasi-trust fund and held as such for the account of the depositor or the payee."

In Re A. Bolognesi & Co., supra, Circuit Judge Hough stated: "But those claimants who came to the bankrupt to buy drafts and the like, and got what they bargained for, cannot claim against the fund, for their bargains were completed; they got what they asked for, and, in the absence of any circumstances of active fraud or deception, the fact that the commercial paper issued to them remains unpaid does not change their status as general creditors."

In Re Gubelman, supra, Circuit Judge Hough stated:

"We have held, quite plainly as it seems to us, that if A. intrusts to B. moneys for investment in a particular manner, but B. does not carry out his undertaking and becomes bankrupt, A. may recover his money out of any fund belonging to B.'s estate into which A.'s money can be traced. The reason for this ruling is that B., by undertaking, as stated, assumed a fiduciary relation to A., and by neglecting to invest as agreed was guilty of a breach of trust. In re Bolognesi, 254 F. 770, 166 C. C. A. 216; In re Jarmulowsky, 258 F. 231, 169 C. C. A. 297; In re Shapiro (C. C. A.) 298 F. 1021. But if B. does make the investment or agreed disposition of A.'s money, and even though he appropriates whatever was produced by that money, A.'s right to the original fund is gone, whatever may be his rights to the proceeds of B.'s tortious conversion. In re Brown, 175 F. 769, 99 C. C. A. 345.

"This is a matter of general commercial law, in respect of which the decisions of the states in which the United States courts sit are not binding on the latter (Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865)."

In General Baking Company v. Gordon, supra, it is stated:

"Any deposit by which money is to be used for the general business of the depository by its inherent nature creates the relationship of debtor and creditor, and immediately negatives the existence of a trust.

"All the questions argued in the case therefore depend upon the essential issue whether this deposit account was to be used

---

[1] Reargument granted.

by the Trust Company in its general banking business. I think that that was clearly the intention."

█ In the present case the parties contemplated, by their contract, that the bank in consideration of an inactive deposit of $2,000 was to transmit at the close of business each day the total amount of the deposit made by the managers of plaintiff's stores at and near Vandergrift, and that the deposits thus received, whether cash or checks, were to be mingled with and become a part of the assets of the bank. The parties did not intend that a trust should be created by their contract and a trust is not to be implied therefrom.

█ Did a constructive trust arise by reason that the deposits in question were received while the bank was insolvent and while the bank's officers knew of the bank's financial condition, and while negotiations were pending to consolidate said bank with another bank, and also to furnish additional funds for the Citizens' National Bank? Such a trust is implied only when a bank knows that it was hopelessly or irretrievably insolvent when the deposits were made. St. Louis & San Francisco Ry. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683; Quin v. Earle (C. C.) 95 F. 728, 732; Brennan v. Tillinghast, 201 F. 609, 615 (C. C. A. 6); Fidelity & Deposit Co. of Maryland v. Kelso State Bank, 287 F. 828 (C. C. A. 9); St. Augustine Paint Co. v. McNair, 59 F.(2d) 755 (D. C., S. D. Fla.).

In Quin v. Earle, supra, Circuit Judge Gray stated: "The law applicable to the facts thus ascertained is well settled, and is not disputed in this case. If the president and officers of the bank knew or believe that the bank was hopelessly and irretrievably insolvent at the time of receiving the deposit of the complainant, then a fraud was undoubtedly committed by the bank upon the complainant, for which there should be a remedy. But fraud must be proved, and is not to be presumed, and the burden of proof is on the complainant. The mere fact that the bank was in an embarrassed condition, by reason of the large indebtedness to it from its president, is not sufficient of itself to establish the fraud alleged in this case. A trader, whether a corporation or an individual, may be struggling in the straits of financial embarrassment, but with an honest hope of weathering the financial storm and of being eventually solvent. Property received by such an individual or concern in the ordinary course of business during the period of such embarrassment becomes honestly theirs, and the fact that their expectations were unrealized, and their hopes not well founded, would not fasten upon them a fraud that would vitiate their business transactions."

In Brennan v. Tillinghast, supra, Judge Sanford stated: "However, the mere fact that the bank is known to be insolvent at the time the deposit is received is not in our opinion sufficient of itself, without more, to confer this right of rescission upon the depositor."

█ It is common knowledge that, when the Citizens' National Bank suspended business, there were many banks insolvent and that negotiations were encouraged by persons in authority in order to save such institutions. The rule requiring knowledge of hopeless insolvency is reasonable. Hopeless insolvency did not occur in the present case until the negotiations to consolidate and to acquire additional funds proved futile, which was after the transmission of the drafts, October 5, 1931.

### Decree.

And now, to wit, this 17th day of November, 1932, this cause came on to be heard at this term, and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz.: That the bill be dismissed at the costs of the plaintiff.