**RURAL AGR. SCHOOL DIST. NO. 1, GROSSE POINTE TP., WAYNE COUNTY, MICH., v. GUARDIAN NAT. BANK OF COMMERCE OF DETROIT et al.**

No. 5886.

District Court, E. D. Michigan, S. D.

March 13, 1934.

William G. Fitzpatrick, of Detroit, Mich., for plaintiff.

Frank E. Wood and Harry Kasfir, both of Cincinnati, Ohio, and Warren, Hill, Hamblen, Essery & Lewis, of Detroit, Mich., for defendants.

KNIGHT, District Judge.

On January 1, 1933, the Guardian National Bank of Commerce of Detroit under purchase took over all the assets and assumed all the liabilities of the Guardian Bank of Grosse Pointe, in the State of Michigan. The last-named bank was a designated depository for funds of Rural Agricultural School District No. 1, Grosse Pointe Township, Wayne County, Michigan, the plaintiff herein.

On December 31, 1932, there was on deposit in the aforesaid depository to the credit of plaintiff the total of $8,411.40, in three several accounts designated general, pay-roll, and coupon accounts. On February 11, 1933, on which date the moratorium on banks created by the Governor became effective and after which date the defendant bank did not open for business and was declared insolvent, the total of deposits of the plaintiff in the defendant bank was $28,018.18, made up of a general account of $26,895.40, a pay-roll account of $485.28, and a coupon account of $637.50. Dividends aggregating 45 per cent. on the two first-mentioned accounts have been paid by the receiver, leaving still on deposit $16,137.24 in the general account; $306.47 in the pay-roll account; and $637.50 on the coupon account. The record discloses that a dividend of 35 per cent., included in the aforesaid total dividends paid, was paid and received without prejudice to any rights of the plaintiff. In view of the determination herein, it is immaterial that the balance of the dividends was not paid under such a stipulation.

The plaintiff contends that all the aforesaid deposits were illegal and unlawful and are impressed with a trust and entitled to preference in payment, because the defendant bank was not a designated depository for the funds of plaintiff and, also, because the preceeding through which the defendant bank purchased the assets of the Guardian Bank of Grosse Pointe were not legal and valid to give title. Defendants' answer is that a specific authorization was not necessary, that in purchasing the assets of the last hereinbefore named bank it became a successor depository legally holding these deposits, and further the proceeding leading to such purchase was in accordance with law and valid.

The designation of the Guardian Bank of Grosse Pointe as a depository for plain- tiff's funds was made pursuant to section 7113 of the Compiled Laws of 1929 of the State of Michigan. When such designation was made, the depository was required by law to give a bond. It is conceded that such requirement was removed by later amendment, and thereafter a resolution adopted by the district board of plaintiff making a redesignation without bond. Section 7113 provides that, "The electors at the annual meeting *may* designate a depository," and in the event of its failure so to do "the district board * * * *may* designate a depository." It also requires the treasurer of the district to deposit all funds in depository "upon designation of any depository." Under section 7112 the treasurer *is authorized to deposit funds in* banks of his own selection. This provision is conditioned, however, upon failure of the electors or board to make a designation. With or without designated depository the treasurer is required by law to give a bond in the full amount of any moneys to come into his hands. Section 7111 of the Compiled Laws of 1929 of the State of Michigan. The district and board may well have regarded such bond sufficient without limiting the places of deposits. It is significant that the word "may" was used in that part of section 7113 which relates to the designation of the depository, and the word "shall" was used in the same section with reference to the bond of the depository, and also it will be noted that the section provided that the treasurer should not be held liable "for any neglect or default by any such depository." While the word "may" is often construed must or shall, the construction to be given the word is to be determined by the intention gathered from the connection in which it is used. It seems clear the legislative intent was that the designation of any depository was optional. It seems to me therefore, in the light of this optional provision, that the defendant bank did not become a "successor depository" and occupied no different relation to plaintiff than any other bank in which deposits may have been made.

It has been held in numerous cases that public funds received with knowledge that "essential requirements" have not been observed are impressed ex maleficio with a trust. "Essential requirements" in certain cases include want of designation and failure to provide a bond. Reichert v. United Savings Bank, 255 Mich. 685, 239 N. W. 393, 82 A. L. R. 33; In re North Missouri Trust Co. (Mo. App.) 39 S.W.(2d) 415; Reichert v. American State Bank, 260 Mich. 49, 244 N. W. 225; Reichert v. State Savings Bank, 261

Mich. 227, 246 N. W. 95, cited by defendants. These cases do not apply here, as no designation was necessary and no bond need be required. Defendant bank took over or received these deposits in question with knowledge that they were public funds. If it conducted its disposition of them in such a manner as reasonably might be expected to lead plaintiff to believe, and the plaintiff did believe, the Guardian Bank of Grosse Pointe was continuing as depository, it seems to me the deposits are impressed with a trust provided the assets of the banks in question were augmented by deposits.

On January 1, 1933, plaintiff's clerk received from the Guardian Bank of Grosse Pointe a written notice, dated December 23, 1932, in substance as follows: "In order to provide better facilities and a more commodious banking business * * * the Guardian Bank of Grosse Pointe at the close of business December 31, 1932, will move * * * to a new location * * * and become a branch of the Guardian National Bank of Commerce of Detroit."

The evidence shows that following removal the former officials and employees continued in service; passbooks formerly issued to and held by plaintiff were continued in use without change in any particular except the addition of the amounts of deposits and withdrawals; the accounts of plaintiff were continued on the identical ledger sheets theretofore used; many checks were drawn on the Guardian Bank of Grosse Pointe, paid and charged on the old passbooks and ledger accounts; a check for $25,000, dated February 1, 1933, given by Grosse Pointe township, payable to the treasurer of plaintiff, was deposited with defendant bank and credited on the passbook issued by the Jefferson Savings Bank, the predecessor of the Guardian Bank of Grosse Pointe, and thereafter used by the latter; on January 9, 1933, a check for $3,300, and on January 27, 1933, a check for $31,300, drawn by plaintiff on its account in the Grosse Pointe Savings Bank, were placed by defendant bank in the pay-roll account of plaintiff and evidenced in the defendant bank by record on the old passbook and on the old ledger account records of the Guardian Bank of Grosse Pointe. The testimony of the treasurer of the plaintiff is to the effect that he believed there had been no change in the bank. The bank deposits were made by him; the withdrawal checks issued by him.

There is evidence of record showing that the treasurer observed the name Guardian National Bank of Commerce on the door of the new location, and that two deposit slips captioned in the name of the defendant bank were delivered to him and certain checks drawn by him on defendant bank. However, it is my opinion that the transactions with defendant were such as to be insufficient notice to plaintiff of the proposed changed relations or to lull the plaintiff into the belief, or cause its officers to believe that the designated depository was being continued as such. A trust therefore was impressed on these deposits.

It is agreed that a legal demand for payment of these deposits has been made. It is conceded that at the time of the demand there were in the hands of the receiver of the defendant bank sufficient funds in liquid form to meet these deposits. It is conceded that these deposits must have augmented the assets to the amount of the deposits to entitle plaintiff to a preference. Since the accounts were carried under three separate heads, such augmentation applies separately as to each account.

To entitle plaintiff to a preference, it must show that the assets of the defendant bank were augmented not only by the receipt of the trust fund, but that the deposits in question came into the hands of the receiver. Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593. This does not mean that the identical deposit must be traceable into the hands of the receiver. It means an increase in or addition to the assets of the bank. Hirning v. Federal Reserve Bank (C. C. A.) 52 F.(2d) 382, 82 A. L. R. 297. Such increase must be through the addition of new cash or new solvent credit. Board of Commissioners of Crawford County, Ohio, v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100. There is no augmentation where the alleged trust deposit is made up by crediting the depositor with the amount of a check drawn upon another deposit in the bank. Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Empire State Surety Co. v. Carroll County, supra. The balance in the general account in the Guardian Bank of Grosse Pointe on December 31, 1932, was $1,894.40. This balance was part of a deposit of $88,084.52 made on September 30, 1932. This latter deposit consisted of a check of the township of Grosse Pointe drawn on the Guardian Bank of Grosse Pointe and payable to the order of plaintiff. The only other deposit entering into the general account from the last-named date to February 11, 1933, was made up of a check in the amount of $25,000 drawn on

the township of Grosse Pointe on the Guardian Bank of Grosse Pointe and payable to the plaintiff. Under many authorities these two checks created no augmentation of the assets of the state bank or the national bank. They resulted only in a shifting of liability. No preference or priority therefore exists in connection with the balance, amounting to $16,137.24, in the general account of February 11, 1933.

A different situation exists as regards the coupon account. It does not appear how the coupon account was deposited. The amount of this account, $637.50, was not changed after December 31, 1932. The balance came from deposits made in December and June, 1932. The deposits were made for the special purpose of paying interest on a bonded indebtedness of the plaintiff. The bonds in question were made payable at the depository. These facts, however, create a situation no different in effect from that of the general and pay-roll accounts. These were deposited, especially the latter, for particular purposes. The burden was upon the plaintiff to show that the assets of the bank were augmented by the coupon deposits. For the reason hereinbefore assigned, plaintiff is not entitled to a preference in these accounts.

Proceedings for the liquidation of the Guardian Bank of Grosse Pointe were taken pursuant to section 56 of Act No. 66 of the Public Acts of Michigan of 1929. Section 59 of the same act contains provisions regarding the consolidation of a state bank with a national bank, the purchase and assumption of liabilities of a national bank by a state bank, and the absorption of a state bank by a national bank. It also provides that the "commissioner of the banking department shall also require the national banking association to furnish certified copy of consent of the comptroller of the currency to such consolidation, liquidation or purchase." No certified copy of consent was obtained by the defendant bank. The proposed terms of purchase were submitted to the comptroller, certain amendments were suggested by him, and such amendments made. The defendants claim that this provision regarding a consent has no application to liquidation under section 56, and applies only to a consolidation between a state and a national bank, a purchase and liquidation of a national bank by a state bank, and an absorption of a state bank by a national bank. Defendant reads "liquidation" as included in conjunction "purchase" and construes "absorbed" as used in the section as meaning the consolidation of a state bank with a national bank under the charter of the latter. The application of the words, "consolidation, liquidation or purchase," as used in section 59, is not entirely clear. Force is added to the defendant's position by reason of the fact that no certificate was required by the Commissioner. The liquidation was approved and carried out, and there is nothing in the federal statutes which requires the approval of the Comptroller of the Currency upon the purchase of the assets and the assumption of the liabilities of a state bank by a national bank. The federal statute, 12 USCA § 34a, provides that where there is a consolidation of a state with a national bank, the "corporate existence" of the state bank is "merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions." It is my conclusion that it was not necessary that the consent of the Comptroller be procured and that the agreement of purchase between the banks was valid. A decision upon this point, however, is not necessary, since failure to prove the augmentation of assets applies to the defendant bank whether this agreement was valid or otherwise.

Findings may be prepared in accordance with this decision.