### ERIE R. CO. v. MIZELL.
#### No. 905A.

District Court, W. D. New York.

Dec. 14, 1934.

John W. Hollis, of Hornell, N. Y., for plaintiff.

Almon W. Burrell, of Canisteo, N. Y. (Abbott, Rippey & Hutchens, of Rochester, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

On April 29, 1932, plaintiff deposited with the Citizens' National Bank & Trust Company of Hornell, N. Y., the sum of $30,000. Plaintiff contends that this was a special deposit, and it brings this action to recover $18,274.26 claimed to be the balance thereof, after the deduction of certain checks paid by the bank. It is the defendant's claim that the action must be dismissed both because there is a defect in the party defendant and that the deposit is a general deposit to be paid pro rata with other creditors.

The bank closed its doors at noon on April 30, 1932. The Comptroller of the Currency took charge on May 2, 1932. On June 4, 1932, Horace Mizell became receiver of the bank and has continued to act as such at all times since.

In view of the decision at which the court arrives regarding the nature of this deposit, it is not necessary to determine the question of any defect in the party defendant.

For many years including and prior to 1932, the plaintiff did an extensive business at Hornell, N. Y., as the terminal of one of its railroad divisions and through the operation of shops. During these years the plaintiff had a semimonthly pay roll aggregating many thousand dollars and during the same time it had a general deposit account with the Citizens' National Bank & Trust Company of Hornell, N. Y., made up through deposits coming from its railway service at that point, and deposits made directly through the main office of the plaintiff in varying amounts at different times, to make its deposit account sufficient to meet these pay rolls.

From 1917 to 1928, the arrangement between the plaintiff and the bank called for deposits by the plaintiff with the bank of amounts up to $50,000, as requested by the bank, to assist the bank to cash pay roll checks on each pay day. Thereafter arrangement was made for a decrease in the amount of this deposit to the definite sum of $25,000, and still later and in or about August, 1931, and continuing until April, 1932, at the instance of the plaintiff, these deposits for the purposes aforesaid were discontinued. In April, 1932, on account of reasons resulting from the failure of another bank in Hornell, the Citizens' National Bank & Trust Company again requested additional deposits by the plaintiff to be applied or used in the payment of pay rolls.

The $30,000 received on April 29, 1932, was credited to the general deposit account of the plaintiff, and the funds received in cash commingled with the general funds of the bank. The question of what makes a deposit in the bank a special deposit as distinct from a general deposit has had the consideration of the courts in many cases. This court has had occasion to consider this question recently in the following cases: Bridge v. First National Bank-Detroit et al. (Equitable Trust Co. v. Guardian National Bank) 5 F. Supp. 442; In re Battani et al. (Eckhout v. Guardian National Bank) 6 F. Supp. 376; Hillsdale Grocery Co. v. Union & People's National Bank, 6 F. Supp. 773; Rural Agricultural School District No. 1 v. Guardian National Bank, 6 F. Supp. 482. In those opinions by this court will be found the analyses and the citation of many authorities.

There are certain rules of determination concerning which there is no conflict of authority. The presumption in law is that deposit made in a bank is a general deposit and the burden rests upon one claiming that it is a special deposit to prove it as such. There is another rule of law with which there is no conflict of authority and that is that a deposit to constitute a special deposit must become such by virtue of some agreement expressed or clearly implied. Further, it is not sufficient to show that a trust fund has gone into a general estate. It must be shown that it has gone into a specific fund or has directly augmented the funds in the hands of the receiver to the amount of the claim.

In this case there is not only no proof of any express agreement that the deposit was a special one, but there is no proof from which it may be said that there was any implied agreement. Quite to the contrary, the nature of transactions of plaintiff and the bank for a number of years and the specific communication from the plaintiff to the bank under date of April 25, 1932, with regard to this particular deposit show conclusively that it was a general deposit. On the last-mentioned day plaintiff had an account in the bank. It wrote defendant to credit the specific sum of $30,000 to that account. It was so credited. During all the time when these extra funds had been transmitted by the plaintiff to the bank, they had been carried in the general account of the bank. These funds, together with balance in the bank to the credit of plaintiff, were being used to meet these pay rolls semimonthly for years. The balances ordinarily carried in this account were a considerable amount and upon these the bank paid plaintiff interest at a specified rate. That the $30,000 was transmitted in cash is of no moment. It is claimed that on April 30th, about noon, and after $7,000 in amount of pay drafts had been cashed, the plaintiff's official telephoned the president of the bank to remit to the plaintiff the balance of the $30,000 then unused to pay pay roll drafts, and also to return the drafts which had been cashed. Whether this conversation actually took place does not affect the question presented here. The money with the aforesaid letter directing its deposit as a credit had then been received, the money deposited in the general funds of the bank and credit for it given to the plaintiff. The transaction of making the deposit had been consummated. It had then become either a general or a special deposit, and certainly, since nothing was done at the bank to change the deposit as then made, any agreement, such as claimed by plaintiff, if entered into by the president of the bank under such circumstances, was of no legal effect. Since it is found that this was not a special deposit, the question of the tracing of the fund or the augmentation of the assets in the hands of the receiver is not necessary to be considered.

In addition to the cases cited in the opinions heretofore rendered by this court on the question at issue here, attention may be directed to Swan v. Children's Home Society of W. Va. (C. C. A.) 67 F.(2d) 84, certiorari denied 290 U. S. 704, 54 S. Ct. 372, 78 L. Ed. 605; Great Atlantic & Pacific Tea Co. v. Citizens' National Bank (D. C.) 2 F. Supp. 29, affirmed (C. C. A.) 66 F.(2d) 883; Michie on Banks & Banking, vol. 5, § 328, c. 9. In Re Warren's Bank, 209 Wis. 121, 244

N. W. 594, 86 A. L. R. 371, and Central Coal & Coke Co. v. State Bank, 226 Mo. App. 594, 44 S.W.(2d) 188, cited by plaintiff, nothing comparable with the facts disclosed in this case is found.

The complaint must be dismissed with costs, and findings and decree may be submitted.