BLAKEY, RECEIVER, *v.* BRINSON.

No. 639. Argued April 21, 1932.—Decided May 16, 1932.

---

*Messrs. Henry Eastman Hackney* and *George P. Barse,* with whom *Messrs. F. G. Awalt, Julius F. Duncan,* and *J. O. Carr* were on the brief, for petitioner.

*Mr. L. I. Moore* for respondent.

*Messrs. George P. Barse* and *F. G. Awalt,* by leave of Court, filed a brief on behalf of J. W. Pole, Comptroller of the Currency, as *amicus curiae.*

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent brought suit against the petitioner, receiver of The First National Bank of New Bern, North Carolina, an insolvent national bank, to recover money alleged to have been paid to the bank upon trust for the purchase, for respondent, of United States bonds. Judgment of the United States District Court for the Eastern District of North Carolina for respondent, was affirmed by the Court of Appeals for the Fourth Circuit. 52 F. (2d) 821. This Court granted certiorari.

The case was tried to the court without a jury and the facts are not in dispute. Respondent maintained an in-

terest-bearing savings account with the bank, in which his credit balance on October 14, 1929, was $1,961.31. Shortly before that date, respondent had had conversations with an officer of the bank in the course of which the latter signified the willingness of the bank to purchase $4,000 of United States bonds for respondent. On October 10 he stated to respondent that the bank would send to Richmond for the bonds and asked him to bring to the bank on the 14th such amount, in addition to his credit balance, as would be required to pay for the bonds. On the latter date respondent drew a check for $2,100 upon another bank, which he deposited in his savings account, thus increasing his deposit balance to $4,061.31. On the 15th, the same officer of the bank informed respondent that the bonds had been ordered and on the 19th said to him, " I have your bonds," and handed to him a charge slip which stated: " This is to advise you that we have this day charged your account as follows:

```
" 4,000 Fourth L. L. 4¼% Bonds.......... $3,960.00
  Acc. Int.................................     .60
  Commission..............................    4.00
                                          _____
                                           $3,964.60"
```

On October 21, the bank charged respondent's savings account on its books with $3,964.60, and credited a like amount as a " deposit " in a " bond account " appearing on its books. The bond account contained only a daily record of credits in the account of checks and deposits and their total, without any reference to respondent or any other customer of the bank. The nature and purpose of the account does not otherwise appear. When the bank closed its doors on October 26, it was discovered that in fact no bonds had been purchased, ordered, or received for the respondent. The only transactions had with respect to respondent or his account were the con-

versations with the officer of the bank and the entry of the debit and credit items mentioned.

On these facts, the District Court concluded that the bank had received the $3,964.60 in trust for the purpose of purchasing the bonds and that as the funds in the hands of the receiver had been augmented by the wrongful commingling of the trust fund with the other funds of the bank, respondent was entitled to payment in preference to the general creditors of the bank. The Court of Appeals thought that the trust arose only on the 19th, when the bank stated that respondent's account had been charged with the purchase price of the bonds, but reached the same conclusion as respects the increase of the funds in the hands of the receiver and the right of respondent to preferential payment.

The petitioner insists, as matter of law, that no trust ever came into existence as the result of these transactions. He also relies on the facts that the $2,100 check credited to respondent's account had been included in a clearing house settlement of the bank with a correspondent, and its proceeds in the form of a draft for the balance due upon the settlement had been endorsed and turned over by the New Bern bank to a third bank in settlement of its account with the latter. From this it is argued that the check did not augment the bank's funds, and that the proceeds could not be traced into the hands of the receiver; hence, as to them the respondent could not be preferred over general creditors.

As we conclude that petitioner's first position is well taken, it is unnecessary to consider the second. It would have been equally competent for respondent to have provided for the purchase of the bonds either by the creation of a trust of funds in the hands of the bank, to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased. But only if the former was the method adopted, could respond-

ent, upon the bank's insolvency and failure to purchase the bonds, recover the fund or its proceeds, if traceable, in preference to general creditors, see *Minard* v. *Watts,* 186 Fed. 245; *Fallgatter* v. *Citizens' National Bank,* 11 F. (2d) 383; *Northern Sugar Corp.* v. *Thompson,* 13 F. (2d) 829.

The relationship established between the bank and respondent by his savings account was, from its inception, that of debtor and creditor, and the credit balance of $1,961.31 in respondent's account on October 14 represented the amount of the bank's indebtedness to him. *Planters' Bank* v. *Union Bank,* 16 Wall. 483, 501; *Phoenix Bank* v. *Risley,* 111 U. S. 125; *Manhattan Bank* v. *Blake,* 148 U. S. 412, 425, 426.

Although there had been anticipatory talk of the purchase of bonds, and the bank's officer had stated that they would be purchased, nothing said or done before the 14th purported to carry out the proposal or to alter the relationship established by the savings account. On that date respondent's credit balance was augmented by the deposit of the $2,100 check, made in conformity to the usual course of business with respect to deposit accounts. Respondent obviously did not alter the debit and credit relationship with respect to the $1,961.31 balance by asking the bank to purchase bonds, or by handing to the bank the deposited check of $2,100. All that happened on that date was equally inconsistent with any purpose to create a trust of the check or its proceeds, and showed unmistakably that the amount of the check, as in the case of any other deposit in the savings account, was to be added to the existing balance and treated like it. In making the deposit, respondent used the customary form of deposit slip and, in accordance with its instructions, the deposit was credited by the bank in the usual manner, both in his passbook and in his savings account on its own books.

After the deposit of the check, as before, the bank remained a debtor and the respondent a creditor for the amount of the credit balance.

The situation thus created continued without change until the 19th, when the bank's officer advised respondent that the bonds had been purchased. If the advice was true, as respondent believed it to be, he was then called upon to pay to the bank the amount of the purchase price, and the bank proceeded, with the assent of the respondent, to liquidate the supposed obligation by charging his savings account with the exact amount of the stated purchase price, with interest and commissions added. ·We can find in this method of discharging a supposed obligation no hint of an intended alteration of the debtor and creditor relationship, with which respondent had been content from the beginning, to that of trustee and *cestui que trust*.

The court below thought that the legal consequence to be attributed to the debiting of the account with the supposed purchase price of the bonds was the same as if the respondent had cashed a check for the amount and had then proceeded to hand the money back to the bank under a specific agreement between him and the bank that the money was to be held as a special fund, for the sole purpose of completing the purchase. This view is not without support. See *Davis* v. *McNair,* 48 F. (2d) 494; *State* v. *Grills,* 35 R. I. 70, 75; 85 Atl. 281; *Northwest Lumber Co.* v. *Scandinavian American Bank,* 130 Wash. 33; 225 Pac. 825; *State* v. *American Exchange Bank,* 112 Neb. 834; 201 N. W. 895. See, *contra, Beard* v. *Independent District of Pella City,* 88 Fed. 375, 381; *Mark* v. *Westlin,* 48 F. (2d) 609; *First National Bank* v. *Williams,* 15 F. (2d) 585; *Howland* v. *People,* 229 Ill. App. 23; *Miller* v. *Viola State Bank,* 121 Kan. 193; 246 Pac. 517; *People* v. *Merchants & Mechanics' Bank of Troy,* 78 N. Y. 269; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.,* 242 Mass. 181; 136 N. E. 333.

Such a procedure, if actually carried out, might afford a basis, which is lacking here, for the inference that respondent, no longer content with the rôle of creditor, had sought to establish a trust fund. But the mere debiting of his account, without more, for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid, lends no support to such an inference. The cancellation of the credit balance by the debit neither suggests any intention to establish a trust nor points to any identifiable thing which could be the subject of it.

The debit entry may be disregarded, because respondent's assent to it was procured by a false statement; but the only consequence is that his status as a creditor is unaffected and he is entitled only to share in the funds of the bank on an equal footing with other creditors who similarly are the victims of its insolvency.

*Reversed.*