ter, and feel that this evidence was probably incompetent, but under the pleadings and all the evidence in the case, we are unanimously of the opinion that it was not prejudicial.

We do not find any errors in the record prejudicial to said defendant, so we affirm the judgment.

WASHBURN and FUNK, JJ, concur in judgment.

## GARDINER v FULTON

Ohio Appeals, 6th Dist, Lucas Co

No 2735. Decided Jan 5, 1933

Kirkbride, Boesel, Frease & Cole, Toledo, for plaintiff.

Gilbert Bettman, Attorney General, Columbus, Brown & Sanger, Toledo, and S. M. Douglas, Toledo, for defendant.

LLOYD, J.

The several actions consolidated with the above entitled cause were submitted and argued to this court on November 23, 1932 and on the same day the defendant filed an amended answer. The causes were submitted to the court on a motion for judgment on the pleadings based upon the petitions of plaintiffs and this amended answer.

The decision of this court on the issues thus made was announced on December 19, 1932, Gardner v Fulton, Superintendent of Banks, 39 Court of Appeals Opinions, Sixth District, unreported, p. 141, (13 Abs 327). On December 5, 1932 the defendant filed a written motion in the office of the Clerk of Courts for leave to file a second amended answer, a copy of the proposed answer being attached thereto. This motion is now first called to our attention and having decided to grant same we are confronted with the problem as to whether this second amended answer presents any controverted fact which would require a different conclusion than that reached on the motion for judgment on the pleadings as heretofore submitted and considered.

In the amended answer it is alleged that on July 31, 1931 the lessee

"did pay to the Trust Department of said Trustee said sum of $4500.00 as rent for the quarterly period beginning August 1, 1931, and that thereafter said The Ohio Savings Bank & Trust Company mailed to the owners of said premises checks for their respective proportions of said rent,"

this allegation being an admission of a similar statement of fact alleged in the petitions of plaintiffs. In the second amended answer the foregoing allegations are changed to read that lessee:

"on or about the 31st day of July, 1931, executed and delivered to the Trust Department of said Trustee, lessee's check drawn against its commercial account with said The Ohio Savings Bank & Trust Company for the sum of $4,500.00 as rent for the quarterly period beginning August 1, 1931, and that thereafter said The Ohio Savings Bank & Trust Company charged said check to said commercial account of said lessee, the credit balance in which said account was at that time in excess of the amount of said check, credited the amount thereof to the account of the Trust Department representing transactions between plaintiffs and said Trust Department, and mailed to the owners of said premises checks for their respective portions of said rent."

Followed by the allegation that

"Defendant denies that said The Ohio Savings Bank & Trust Company received from the lessee of said lease any currency, and further denies that the proceeds of the check which it did receive from said lessee ever become or was a part of its cash in vaults."

It is claimed as we understand it, that the foregoing allegations in the second amended answer, if true, require a different conclusion than that heretofore reached by this court on the facts disclosed by the pleadings then before the court, and as authority therefor our attention is called to the case of Blakey v Brinson, Supreme Court Reporter of June 1, 1932, page 516. In that case it was sought to recover money alleged to have been paid to the bank upon trust for the purchase of U. S. bonds. The facts as there narrated are that Brinson, who had a credit balance of $1691.31 in an interest-bearing savings account in The First National Bank of Newburn, N. C., had a conversation with an officer of the bank who signified the willingness of the bank to purchase the desired bonds. Later this officer asked Brinson to make an additional deposit to cover the cost of the bonds to be purchased for him. Brinson thereupon drew a check on another bank for $2100.00, thereby increasing his credit balance to $4061.31. Thereafter, on October 15th Brinson was informed by the bank officer that the bonds had been ordered and on October 19th that they had been received, the officer then handing to him a charge slip showing that the price of the bonds plus interest and commission, aggregating $3964.60, had been charged to his savings account and the books of the bank showed that a like amount had been credited as a "deposit" in a "bond account," which contained only a daily record of credits and their totals without reference to Brinson or any other customer of the bank and without any designation of its nature and purpose. No bonds had in fact been purchased, ordered or received in behalf of Brinson and, other than the entry of the debt and credit items, the only transaction between him and the bank was the conversation had by him with one of the officers thereof. The bank closed its doors on October 26th and, as above indicated, it is claimed that the amount charged to Brinson's savings account constituted a trust and should be considered as preferred above the claims of general depositors.

The court, however, held that the facts in evidence did not disclose such trust relationship. In its opinion the Supreme Court says:

"It would have been equally competent for respondent to have provided for the purchase of the bonds either by the creation of a trust of funds in the hands of the bank, to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased. But only if the former was the method adopted could respondent, upon the bank's insolvency and failure to purchase the bonds, recover the fund or its proceeds, if traceable, in preference to general creditors.

The relationship established between the bank and respondent by his savings account was, from its inception, that of debtor and creditor, and the credit balance of $1961.31 in respondent's account on October 14th represented the amount of the bank's indebtedness to him. On that date respondent's credit balance was augmented by the deposit of the $2,100 check, made in conformity to the usual course of business with respect to deposit accounts. Respondent obviously did not alter the debit and credit relationship with respect to the $1961.31 balance by asking the bank to purchase bonds, or by handing to the bank the deposited check of $2100.00. All that happened on that date was inconsistent with any purpose to create a trust of the check or its proceeds, and showed unmistakably that the amount of the check, as in the case of any other deposit in the savings account, was to be added to the existing balance and treated like it. In making the deposit respondent used the customary form of deposit slip, and, in accordance with its instructions, the deposit was credited by the bank in the usual manner, both in his passbook and in his savings account on its own books. After the deposit of the check, as before, the bank remained a debtor and the respondent a creditor for the amount of the credit balance."

The court further says that:

"We can find in this method of discharging a supposed obligation no hint of an intended alteration of the debtor and creditor relationship, with which respondent had been content from the beginning, to that of trustee and cestui que trust."

The facts show that the check was deposited by Brinson in an existing interest-bearing savings account, not for credit to some other person but for his own credit, and his own purposes, whereas in the instant cases the check of The Commodore Perry Company, the lessee, was drawn on its commercial account in the trustee bank to the order of the bank for credit "to the account of the trust department represent-

ing transactions between plaintiffs (the lessors) and said trust department," and were so paid by the lessee and so credited under the express agreement with the lessee and with the bank that the rentals were to be paid to and received by the bank for the sole purpose of distribution by its trust department to the lessors in the proportion to which they were entitled. So that, as it seems to us, the factual differences between the Blakey and the instant cases are such as to make that authority inapplicable to the questions considered by this court.

In the instant cases a trust was created by express agreement of the parties. In the Blakey case no such relation existed, the relation of Brinson and the bank being merely that of creditor and debtor.

The application for rehearing is denied.

WILLIAMS and RICHARDS, JJ, concur.

**KARNS et v TROSTEL et**

Ohio Appeals, 2nd Dist, Miami Co

No 288.   Decided Nov 30, 1932

Paul G. Gingrich for plaintiff in error.
Thomas, Hyers & Layland, Dayton, for defendant in error.

KUNKLE, J.

Counsel for plaintiff in error seriously object to the court's treating the motion of defendant in error as a demurrer.

Upon a consideration of the authorities cited, we think the trial court was clearly within its province in treating this motion to strike out as a demurrer. Among the authorities that might be cited in support of the action of the trial court in treating this motion to strike out as a demurrer are 18 O.C.C. (N.S.), page 429 in which one paragraph of the syllabus is as follows:

"Because a pleading is demurrable is no ground for striking it from the files; the proper practice is to consider the motion as a demurrer, grant it and then give leave to amend, if desired and proper."

In the 61 Oh St, page 61 the syllabus among other things contains the following:

"In the Common Pleas the motion to strike out should have been treated as a general demurrer to the answer and sustained."

We are of opinion also that the lower court was justified in not only treating the motion as a demurrer but also in sustaining the demurrer.

It appears from the different averments