## KERSHAW et al. v. KIMBLE.
### No. 758.

Circuit Court of Appeals, Tenth Circuit.

June 5, 1933.

Chester Stevens, of Independence, Kan., for appellants.

T. H. Stanford, of Independence, Kan., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

For many years the appellee had an interest-bearing savings deposit account with the Commercial National Bank of Independence, Kansas. Her balance on March 13, 1930, the day the bank failed, was $16,355.64. Claiming that $15.000 of that balance—$10,000 deposited on February 6th and $5,000 on Feb-

ruary 26th—were special deposits, appellee brought this bill in equity seeking a preference over other depositors to that extent. The trial court granted the relief prayed for against the receiver and against the Security National Bank on an alleged contract of assumption.

The law governing the controversy has long been settled in this jurisdiction. If money is deposited generally in a bank, whether in a checking or savings account, whether interest-bearing or otherwise, the relation of debtor and creditor arises, and one such depositor will not be preferred over another; but if moneys are entrusted to a bank to be held intact, or are left with the bank for a specific purpose under circumstances that negative an intent that title to the money passes to the bank, the bank is a trustee or an agent as the case may be. Northern Sugar Corporation v. Thompson (C. C. A. 8) 13 F.(2d) 829. In such event, equity will impress a trust on the moneys, and will decree that they be returned to the owner if they can be traced to the receiver within the rules concisely and clearly stated by the late Judge Cotteral in Blumenfeld v. Union Nat. Bank (C. C. A. 10) 38 F.(2d) 455. Such a wealth of controlling authority is cited in that opinion that little more need be said as to the law. Later cases may be found in Judge Wilbur's opinion in Schilling v. Rowe (C. C. A. 9) 64 F.(2d) 188.

Neither in her pleading nor her proof does appellee bring herself within the class entitled to a preference over her fellow depositors. Laying to one side the descriptive epithet "special" with which the pleader adorns the narrative, the bill recites the appellee's practice of sending moneys "to said bank for deposit in her savings account to be used by said bank in purchasing for her certain designated stocks or other securities; that said bank, on receipt of said money, placed same to plaintiff's credit in her said savings account and upon doing so would then purchase for plaintiff said stocks or securities designated by plaintiff and upon purchasing same would and did charge said savings account with the money used in purchasing said stock or securities against the special deposit for said purposes." It is alleged that the sums sought to be recovered as a trust fund were sent to the bank and deposited in her savings account pending the purchase of the securities, which had not been accomplished when the bank failed. Appellee testified that for many years she had maintained the savings account and from time

to time would instruct the bank to purchase securities for her. "I instructed them as to what bonds I wanted to buy, and when they were bought they would send them to me by registered mail after they had charged the amount to my account." As to the sums in controversy, she testified that after talking with officers of the bank, she decided to buy some Roth & Faurot bonds when they were issued. She sent $10,000 to the bank with a letter, concededly genuine, in which she said:

"Enclosed please find a check for $10,000.-00 which I would like to have placed to the credit of my account and then if you have that amount of bonds such as we discussed the last of December I would like to have them, charging to my account and mailing the bonds to me."

She mailed the $5,000 to the bank with the following letter of instructions, over her admitted signature:

"Enclosed please find check for $5,000.00 which I would like to have placed to my credit. I want you to keep my order for 100 shares of Prairie Oil & Gas at 46 open and charge to my account when the order is filled."

The moneys were deposited in her savings account as directed, ordinary deposit slips written therefor, and duplicates—at least of the $10,000 slip—mailed to appellee with a statement that the funds had been deposited in her savings account. The bank was closed before the bonds were ready for delivery; appellee cancelled her order as to Prairie stock and instructed the President of the bank "to keep the money until I informed him what stock to buy."

These are the undisputed facts, as testified to by appellee and disclosed by letters which she admits having written. It is true she produced at the trial what purported to be carbon copies of two other letters which she testified she wrote the same day as the genuine letters; the originals of these other letters could not be found, and the bank's officers had no recollection of having received them. Confronted with the letters bearing her signature and above set out, she said she sent two letters with each remittance, keeping no carbons of the ones received by the bank, but keeping carbons of the ones that are lost. Her explanation of the unusual circumstance of two separate letters with each of two remittances has at least the merit of novelty; we do not analyze it closely, for the genuine letters are conceded to have accompanied the remittances, and even if other letters were in the same envelopes, the bank had a right to follow the explicit instructions, which were in accord with a practice extending over the years, contained in the letters concerning which there is no dispute; it did so, and notified her thereof.

It should require neither argument nor authority to demonstrate that when appellee sent moneys with written instructions to deposit in her account until a future date, the relation of debtor and creditor arose when the deposit was made. One who deposits in a saving account concededly becomes a creditor of the bank. These moneys were deposited in that account by her written instructions. That ends the case, and the question of whether the funds can be traced to the receiver does not arise.

If any lurking doubt existed under the earlier decisions, it was resolved against appellee by the Supreme Court of the United States in Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288, the facts of which are strikingly similar to those herein recited. There, as here, the depositor had an interest-bearing savings account with a bank that later failed. There, as here, the depositor arranged with an officer of the bank to purchase specified securities for the depositor. There, as here, it was necessary to increase his balance in the savings account for the purpose. There, as here, money was sent to the bank to be deposited in the savings account, to be then used for the purchase of the securities. Unlike our case, the bank there advised that the securities had been acquired and a charge made to the account for the purchase price; and therein the Brinson Case is stronger than appellee's. The depositor there was denied the preference decreed here. While the entire opinion bears directly upon the case at bar, two paragraphs of the opinion of Mr. Justice Stone are so pat that we quote them:

"The relationship established between the bank and respondent by his savings account was, from its inception, that of debtor and creditor, and the credit balance of $1,961.31 in respondent's account on October 14 represented the amount of the bank's indebtedness to him. * * *

"It would have been equally competent for respondent to have provided for the purchase of the bonds either by the creation of a trust of funds in the hands of the bank, to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased. But only if the former was the method adopted could respondent upon the bank's insolvency and fail-

ure to purchase the bonds, recover the fund or its proceeds, if traceable, in preference to general creditors." Blakey v. Brinson, 286 U. S. 254, 260, 261, 52 S. Ct. 516, 517, 76 L. Ed. 1089, 82 A. L. R. 1288.

The decree is reversed with instructions to dismiss the bill with costs.

Reversed.