**FULTON, Superintendent of Banks, v. EVANS et al.**

**No. 6748.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 11, 1935.

M. P. Mooney, of Cleveland, Ohio (Ira J. Fulton, of Cleveland, Ohio, and John W. Bricker, of Columbus, Ohio, on the brief), for appellant.

Luther Day, Geo. H. Rudolph, and Marc Grossman, all of Cleveland, Ohio (Frank T. Cullitan, Neil W. McGill, Day & Day, and A. E. Bernsteen, all of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

Fulton, as liquidating agent of the Standard Trust Bank of Cleveland, Ohio, appeals from an order of the District Court adjudging appellees, the United States for the use and benefit of federal court receivers and trustees in bankruptcy, the county of Cuyahoga, Ohio, and the Old Line Insurance Company of America, a lien on certain securities pledged by the bank to a surety company to indemnify it against losses on depository bonds which it executed to the appellees to protect them against losses on deposits which they made in the bank prior to its failure. The grounds on which the order is attacked, so far as the trustees, receivers and the county of Cuyahoga are concerned, were considered and passed upon in Fulton v. Lloyds Casualty Co., 75 F.(2d) 295 (6 C. C. A.). We see no reason to depart from that decision, and for the reasons therein stated the order is reversed as to the trustees and receivers but is affirmed as to the county of Cuyahoga.

The claim of the insurance company is based on a contract that the company made with the bank to purchase $100,000 worth of mortgage notes. The bank had agreed to purchase the assets of the Depositors Savings & Loan Company, a financial institution of Cleveland. The State Banking Department required as a condition of its approval of the purchase that the bank have in hand the funds to pay the purchase price. In order to meet this requirement it became necessary for the bank to sell some of the mortgage notes forming a part of the assets of the loan company. With this in view it approached the insurance company with an offer to sell $100,000 worth of these notes. The insurance company agreed to buy them if they met its requirements. The bank requested the insurance company to place with it $100,000, the purchase price, in order that it could inform the banking department that it had the money to pay for the assets of the loan company. The insurance company consented on condition that the fund be secured by a depository bond until the notes were delivered to and accepted by it. The bank agreed, the $100,000 was paid, the purchase of the loan company's assets consummated, and a depository bond executed. To indemnify the Federal Surety Company, which gave the bond, against losses thereon, the bank pledged with it the mortgage notes on which the insurance company was adjudged a lien by the trial court.

The $100,000 was paid to the bank in two checks of $45,000 each and by the transfer to it of $10,000 from an account which the insurance company had in the bank for the deposit of premiums collected in the Cleveland district. The bank deposited the checks in the premium account of the company. Thereafter when the bank was advised by the company that a mortgage had been accepted, it charged the

amount against the $100,000 fund in the premium account and sent to the company a debit statement specifying the mortgages charged against the fund. There were delays in furnishing the insurance company acceptable notes. In November, four months after the contract was made, only $40,000 worth of notes had been submitted to and accepted by it. Being dissatisfied with the delays, the company advised the bank at that time that it would withdraw a part of the deposit shortly and the balance before December 31. On November 30 it drew a check on the bank for $22,639.15, $20,000 of which was against the $100,000 deposit and $2,639.15 against the premium fund proper. Before the balance of the deposit was withdrawn, the bank was taken over by the State Banking Department, at which time there remained in the account $40,286.78. In the interim the bank had made monthly reports to the insurance company of the balance in the $100,000 fund, with interest allowances thereon, and separate monthly reports of premium deposits. Upon these facts as found by the master the trial court held that the $100,000 was placed with the bank as a special deposit for a particular purpose, and that the insurance company was entitled to have its claim paid out of the securities pledged to the surety company on the depository bond in preference to other creditors.

■ We cannot agree with the court's conclusion. There is nothing in the record to show that the deposit was segregated or held apart from the other funds of the bank. It was placed in the insurance company's open account in which premiums were deposited and from which withdrawals were made from time to time. It is true, as found by the master, that the bank furnished the insurance company monthly reports of the balance in the $100,000 fund and also separate monthly reports of the premium deposits, but that circumstance is not enough to show a special deposit or segregation from other moneys and assets of the bank. Nor did the purpose of the company to use $100,000, of the funds in the premium account to pay for the notes create such a deposit or segregation, for indeed it treated that account in its entirety as a checking account, as shown by the check which it drew in November against both funds in the account. Besides, while the company obviously wished monthly reports as to the amounts in the $100,000 fund consumed in paying for notes which it had accepted, quite as obviously it placed the money with the bank as a general deposit until it was thus consumed or withdrawn. Had its intention been to retain title to itself, it would hardly have demanded a depository bond, certainly it would not have accepted pay for the use of the money in the form of interest allowances. Such actions on its part are wholly inconsistent with a special deposit. Keyes v. Paducah & I. R. Co., 61 F.(2d) 611 (6 C. C. A.); Richards v. Fulton, 75 F.(2d) 853, 854 (6 C. C. A.). In our opinion they are controlling in the present circumstances.

■ There was no showing that any part of the money was in the bank at the time it failed or that at all times from the date of the deposit up to that time the bank had in its vaults an amount equal thereto in value. It does not appear that any of the notes pledged to the surety company were notes that the bank acquired from the loan company or sold to the insurance company. The notes acquired from the loan company were a part of the bank's assets, and it had no more right to pledge those notes to secure private deposits than to pledge notes which it held prior to its purchase of the loan company's assets. It is evident that the understanding between the parties was that the money should be placed on deposit, the insurance company requiring as a condition thereof that it be protected by a depository bond, and the bank, with the approval of the insurance company, crediting to the account interest allowances thereon. The fact that the bank was authorized to transfer, and did transfer, to itself parts of the deposit from time to time to pay for notes delivered to and accepted by the insurance company did not change the status of the bank from that of debtor to the insurance company to bailee of the fund. Upon the delivery of the money the bank became a debtor of the insurance company, whether the transaction be treated as an advance payment of the purchase price of the notes or as a deposit with the right in the bank to use it to pay for notes as they were furnished to and accepted by the company. In either view there was no special deposit or trust impressed upon the fund justifying a court of equity in requiring the payment to the insurance company of a like amount from the proceeds of the notes pledged to the surety

company or from other assets of the bank in preference to other creditors. Blakey v. Brinson, 286 U. S. 254, 261–263, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288.

The order as to the insurance company is set aside and its claim as a preferred claim disallowed.