### HARRELL v. LAWHEAD et al.
### No. 998.

District Court, N. D. West Virginia.
Jan. 9, 1936.

H. J. Wilcox, of Philippi, W. Va., and D. H. Hill Arnold, of Elkins, W. Va., for plaintiff.

Wm. T. George, of Philippi, W. Va., for defendants.

BAKER, District Judge.

The facts in this case which seem pertinent to the issues are undisputed and are in brief as follows: Some time prior to September 30, 1931, the Peoples Bank of Philippi, W. Va., a state banking institution, had become insolvent, and Charles E. Lawhead had been appointed by the banking commissioner of the state of West Virginia, receiver of said bank; that on September 30, 1931, the said Charles E. Lawhead, as such receiver, had on deposit in the Citizens National Bank of Philippi, the sum of $7,694.88. This money did not represent a direct deposit which the said Lawhead had made in the Citizens National Bank of Philippi, but consisted of what may be termed "paper credits." These arose from the fact that when debtors of the Peoples Bank of Philippi paid their indebtedness to Lawhead with checks drawn on the Citizens National Bank, Lawhead would deposit such checks in the Citizens National Bank rather than remove the cash therefrom.

On September 30, 1931, there was considerable tension in the banking situation in Philippi and its surrounding towns, and even surrounding counties. On that date Lawhead, as receiver, presented a check to the Citizens National Bank for the full amount of $7,694.88. After some consultation with certain officers of the bank, it was agreed that this check should not be cashed, but, instead, notes of one Lacy Ford, aggregating $7,000, and of one Dunham, aggregating $4,000, were pledged for the prompt payment, upon proper demand, of any and all deposits made by Charles E. Lawhead as receiver of the Peoples Bank of Philippi in the Citizens National Bank with H. B. Watson, trustee. H. B. Wat-

son was at that time an officer of the Citizens National Bank. At the same time Lawhead executed and delivered his check for the sum of $7,694.88 to H. B. Watson, with the understanding that Watson was to hold this check, and in the event that the bank closed its doors, Watson would take that amount of cash from the funds of the bank, rent a safety deposit box in the name of Charles E. Lawhead and place the cash therein. There was never any action taken by the board of directors to ratify either this pledge, or attempted pledge, of the above-mentioned notes, or this arrangement with Watson. No safety deposit box was ever rented, and the check was never cashed.

On October 5, 1931, a resolution was passed by the board of directors of the Citizens National Bank, limiting withdrawals to any one depositor to 10 per cent. of his account. This resolution was passed because of the financial condition of the bank. On October 22, 1931, the Citizens National Bank closed its doors, was subsequently found to be insolvent, and a receiver was appointed therefor.

The question arises as to the validity of the pledge, or attempted pledge, of the assets of the Citizens National Bank to secure the deposit of the receiver of the state bank. It is well-settled law that prior to the amendment to the National Banking Act, passed June 25, 1930 (see U.S.C. A., title 12, § 90), national banks had no power to pledge their assets to secure a private deposit. Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777. The amendment referred to reads as follows: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

At that time the Code of West Virginia defined "public moneys" as follows: "The term 'public moneys,' as used in this article, shall include all money which by law the sheriff in his capacity as such, and as treasurer of the county and districts, is authorized to collect, receive and disburse for public purposes, including State, county, district, school districts, independent school districts and municipalities." West Virginia Code 1931, ch. 7, art. 6, Sec. 8.

It is, of course, elementary law that the funds in the hands of the receiver of a bank belong to the depositors and other creditors of that bank and cannot in any manner be made to fit the definition of "public moneys" as set forth in either of the above-quoted statutes.

It has been urged by counsel for Lawhead that the fact that he was an officer of the state of West Virginia made money coming into his hands "public funds." With this contention I am unable to agree. I cannot perceive that the fact that the receiver of a closed bank has been appointed by the commissioner of banking of the state, instead of by a court of competent jurisdiction, makes any difference in the character of the funds which he receives as such receiver.

It has always been the policy of the National Banking Laws to insure uniformity in the treatment of depositors and a ratable distribution of assets. See Texas & P. R. Co. v. Pottorff, supra.

To permit the attempted pledge in this case to stand would be to create a preference in favor of Lawhead. The fact that this preference is in his favor as the receiver of a state bank and not as a private citizen, does not alter the illegality of the same.

Some contention has been made that the conduct of the Citizens National Bank, through its officials, was such as to create a trust in favor of Lawhead. It is well settled, however, that a preference cannot be predicated upon a mere alleged breach of contract by a national bank or its officers where such breach of contract did not increase the assets of the bank. See Swan v. Children's Home Society of West Virginia (C.C.A.) 67 F.(2d) 84; Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288.

For this reason the court is of the opinion (1) that the deposit of C. E. Lawhead, receiver of the Peoples Bank of Philippi, W. Va., was not a deposit of the character for which the Citizens National Bank was authorized to pledge its assets as collateral.

(2) That the pledge of such assets as collateral was ultra vires, illegal, and void.

(3) That the agreement between Lawhead, receiver, and the Citizens National Bank was void ab initio.

(4) That no trust can be predicated in favor of Lawhead from the facts arising herein.

A decree may be prepared canceling the attempted pledge to Lawhead, and decreeing the plaintiff herein to be the absolute owner of the notes attempted to be pledged.