In Re FARMERS STATE BANK OF AMHERST

BEEVER, Respondent, v. FEDERAL DEPOSIT INS. CORPORATION, Appellant

(289 N. W. 75.)

(File No. 8253. Opinion filed December 7, 1939.)

Lewis W. Bicknell, of Webster, and L. E. Birdzell, of Washington, D. C., for Appellant.

W. H. Morgan, of Britton, and Van Slyke & Agor, of Aberdeen, for Respondent.

ROBERTS, J. On March 18, 1936, the superintendent of banks took possession of the business and property of the Farmers State Bank of Amherst for the purpose of liquidation. Plaintiff commenced this action against the Federal Deposit Insurance Corporation, claiming that he is entitled to be reimbursed for bonds wrongfully converted by the bank. Four separate causes of action are set forth in the complaint. The circuit court found in favor of the defendant upon the claim set forth as a first cause of action, and defendant admitted liability upon the fourth cause of action. From the judgment for the plaintiff upon the second and third causes of action, defendant appeals.

Plaintiff for a second cause of action alleges that he deposited on July 7, 1934, United States government bonds with the bank for safekeeping for which the bank issued a receipt acknowledging possession and agreeing to retain the bonds for safekeeping; that these bonds were wrongfully converted and sold by the bank on August 4, 1934. Plaintiff for a third cause of action alleges that he deposited on September 10, 1935, United States government bonds with the bank for safekeeping; that the bank issued a similar receipt for these bonds; and that one of these bonds was wrongfully converted and sold on November 30, 1935, and another on January 24, 1936.

The case was before the trial court upon an agreed statement of facts. The facts stipulated in connection with the second and third causes of action are as follows:

"The parties to the above entitled action hereby stipulate and agree that the following are the facts in said cause:

"1. That the Farmers State Bank of Amherst, Amherst, South Dakota, is now, and at the times hereinafter mentioned was, a corporation organized under the laws of South Dakota relative to banking corporations, and prior to March 18, 1936, was engaged in the general banking business at Amherst, South Dakota.

"The Federal Deposit Insurance Corporation is likewise a corporation, and was duly organized and existing under and by virtue of Title 12, Section 264, of the United States Code, and acts amendatory thereto, including the acts of June 16, 1933, and August 23, 1935, 12 U.S.C.A. § 264.

"2. On or about December 13, 1933, the Farmers State Bank of Amherst made application for membership in the Federal Deposit Insurance Corporation as provided by law and on and after that date the deposit liabilities and trust funds of said Farmers State Bank of Amherst became insured by the Federal Deposit Insurance Corporation to the extent that such insurance was authorized by the laws of the United States of America.

"3. On March 18, 1936, the Farmers State Bank of Amherst, of Amherst, South Dakota, was closed by the Superintendent of Banks of South Dakota, who suspended all further banking operations and placed the bank in the hands of a liquidating agent for the reason that it became apparent at or about that time that said Farmers State Bank of Amherst was insolvent. Such bank has since that date been in liquidation and is now in the hands of officers duly authorized to liquidate its affairs. * * *

"5. About July 7, 1934, the plaintiff Beever purchased from or through the Farmers State Bank of Amherst five $100.00 Federal Farm Mortgage Corporation bonds, and on that date a safe-keeping receipt * * * was issued * * * The records of the Farmers State Bank of Amherst show the following entry in connection with the sale under date of 8-9-34: 'Debit Midland National Bank and Trust Company $513.39. Credit U. S. Bond account $500.00, Interest received account $13.39.'

"The plaintiff Beever did not know of or authorize the

sale and disposition of said bonds, and did not learn that they had been disposed of until after the suspension of the bank.

"6. On or about September 10, 1935, the plaintiff C. A. Beever purchased from or through the defendant Farmers State Bank of Amherst, United States Treasury Bonds, 1944-46 series Nos. 85276 F and 96378 J each of the denomination of $500.00. On September 12, 1935, the checking account of Beever was charged with $1061.79, and the Midland National Bank and Trust Company of Minneapolis, from whom said bonds were purchased on September 6, 1935, was credited with $1061.79, and a safe-keeping receipt * * * describing said bonds, was issued, dated September 10, 1935, signed by Bornhoft, who added the letters 'Pres.' to his name.

"Said bonds were disposed of, according to the records of the defendant Farmers State Bank of Amherst, as follows:

"On November 29, 1935, No. 85276 F was sent to The Midland National Bank & Trust Company of Minneapolis, which sold the same on November 30, 1935, and credited the deposit account of the defendant Farmers State Bank of Amherst with $524.53, being proceeds of sale of said bonds, and the books of the Farmers State Bank of Amherst on December 3, 1935, contain the following entry. 'Debit Midland National Bank & Trust Company $524.53, Credit United States Bond Account $500.00, Interest received account $24.53.'

"On January 23, 1936, No. 96378 J was sent to The Midland National Bank & Trust Company, which sold the same on January 24, 1936, and credited the deposit account of the defendant Farmers State Bank of Amherst with $531.47 being proceeds of sale of said bond, which was disposed of on the books of said bank as follows: '1-25-36, Midland National Bank & Trust Company, debit $531.47, United States Bond account credit $500.00, interest received account $31.47.'

"The plaintiff Beever did not authorize the sale of said bonds, and did not know of the fact that said bonds had

been disposed of until the suspension of the Farmers State Bank of Amherst.

"8. Subsequent to the closing of the bank Beever demanded of the liquidating agents the several items hereinabove described and when they were not delivered to him, claiming that the proceeds of said bonds, in the hands of the bank, constituted trust funds or deposits which were insured by the defendant Federal Deposit Insurance Corporation, demanded settlement of such defendant which was refused, and he thereupon instituted this action.

"9. At the time all of these transactions occurred, one Arnold Bornhoft was the President of the defendant Farmers State Bank of Amherst, and was the sole managing officer of said bank, having complete control of its affairs.

"For a number of years prior to its suspension there has been very serious irregularities in the Farmers State Bank of Amherst, which by the manipulation of its books, and false entries, were concealed from the examiners and the other officers and directors of the bank by said Bornhoft.

"10. The books and records of the bank did not at any time after the four safe-keeping receipts were issued reflect or disclose that bonds for which a safe-keeping receipt was in the hands of the plaintiff, had been sold, and an examination of the bank and of its several accounts did not at any time disclose the facts set forth in plaintiff's complaint and shown above.

"11. No other person except Arnold Bornhoft had any knowledge of the several transactions described in the complaint and in the foregoing Stipulation of Facts.

"12. In this connection it is further stipulated that the audit of R. L. Swenson, and all of the books and records of the Farmers State Bank of Amherst, South Dakota, shall be deemed to be in evidence and may be used by either party to clarify, supplement, or explain any fact above stipulated."

A supplementary stipulation of facts was also submitted to the trial court. It is therein stipulated that the bank charged the account of the plaintiff on September 12, 1935,

with $1,061.79, the price of the bonds described in the third cause of action and that Regulation I of the Federal Deposit Insurance Corporation, approved August 26, 1935, be made a part of the record before the court.

The trial court concluded that the proceeds from the wrongful sale of the bonds set forth in the second cause of action constituted "a trust fund and also a deposit liability"; that plaintiff is entitled to recover upon the third cause of action for the reason that the proceeds from the sale of the bonds constituted a trust fund; and that the defendant corporation became obligated to the plaintiff as an insurer under the Federal Deposit Insurance Act.

 Section 12B of the Federal Reserve Act, as added by the act of June 16, 1933, c. 89, § 8, 48 St. at L., p. 168, and amended by subsequent acts, 12 U.S.C.A. § 264 (a-z), provides for the creation of a Federal Deposit Insurance Corporation. Plaintiff contends that the transactions detailed in the second cause of action are governed by the act of June 16, 1933; that the deposit of the bonds came within the meaning of the term "deposit liability" in that act. The complaint and the stipulation of facts disclose that the deposit of July 7, 1934, was one of bonds for safe-keeping by the bank and was not a deposit of money. It is conceded that this deposit did not create the relation of debtor and creditor between the plaintiff and the bank, but that the relationship was that of bailor and bailee. Delivery of the bonds to the bank for the purpose of having the same safely kept and the identical bonds deposited returned to the plaintiff constituted a special deposit. 9 C.J.S., Banks and Banking, page 562, § 274; Spry v. Hirning, 46 S. D. 237, 191 N. W. 833. For the purpose of this case we need not determine whether the provisions of the act of 1933 are applicable. If we assume that the right of the plaintiff to recover against the defendant under the second purported cause of action must be determined under the provisions of that act, we do not think that a "deposit liability" was created. The question has arisen in states having bank guarantee acts as to whether special deposits are safeguarded by

such laws. The decisions support the rule that a bailment of bonds with a bank is not a "deposit" within the meaning of that term in guaranty acts. Bloomheart v. Foster, 114 Kan. 786, 221 P. 279; State v. Farmers' Bank, 110 Neb. 676, 194 N. W. 865; Tyler County State Bank v. Rhodes, Tex Civ. App., 256 S. W. 947; State ex rel. Spillman v. Atlas Bank, 114 Neb. 650, 209 N. W. 334. Where the terms of the law provide for the safeguarding of "deposits", it extends only to such deposits as are general deposits. Money or the equivalent of money must in intention and effect be placed in, or at the command of, the bank so that the relation of debtor and creditor is created between the bank and the depositor. 9 C.J.S., Banks and Banking, page 49, § 21; see also annotation in 51 A.L.R. 920.

We come now to consider the contention that the proceeds from the wrongful sales of the bonds constituted trust funds for which defendant was liable as an insurer under the amendment of 1935. The amendment provides that the Federal Deposit Insurance Corporation shall insure "the deposits of all banks which are entitled to the benefits of insurance" as therein provided. 12 U.S.C.A. § 264(a). Congress included in this act a definition of the term "deposit". It is defined to mean ("the unpaid balance of money or its equivalent received by a bank in the usual course of business and for which it has given or is obligated to give credit to a commercial checking, savings, time or thrift account, or which is evidenced by its certificate of deposit, and trust funds held by such bank whether retained or deposited in any department of such bank or deposited in another bank, together with such other obligations of a bank as the board of directors shall find and shall prescribe by its regulations to be deposit liabilities by general usage.") 12 U.S.C.A. § 264 (c) (12). The act further provides that "trust funds held by an insured bank in a fiduciary capacity whether held in its trust or deposited in any other department or in another bank shall be insured in an amount not to exceed $5,000 for each trust estate, and when deposited by the fiduciary bank in another insured bank such trust funds shall be similarly insured to the fiduciary bank according to the

trust estates represented. Notwithstanding any other provision of this section, such insurance shall be separate from and additional to that covering other deposits of the owners of such trust funds or the beneficiaries of such trust estates." 12 U.S.C.A. § 264 (h) (9).

The Board of Directors of the Federal Deposit Insurance Corporation has specified by regulation certain obligations of an insured bank to be "deposit liabilities" as directed in Section 264 (c) (12). It is not contended that this regulation is applicable to the state of facts presented by the record in this case, and we need not consider its provisions.

The question to be determined is whether liability for "trust funds" within the meaning of the Federal Statute has been established. There was no attempt to trace the proceeds from the sales of the bonds into any specific property or fund other than the general assets of the bank. The right to recover funds or other property traced into the hands of the receiver of an insolvent bank is not involved. There is no identifiable res in the possession of defendant.

Counsel for defendant contend that if the facts in the instant case create a trust, it is one arising by operation of law as distinguished from an express trust and not within the contemplation of the statute. When plaintiff left the bonds with the bank for safekeeping the relationship established as we have stated was that of bailor and bailee. Ordinarily a bailee is not liable if without his fault the subject matter of the bailment is lost or destroyed. We think it must be admitted that if the bonds had been lost or destroyed through no fault of the bank, or if the bank had accepted chattels in exchange for the bonds, the defendant would have incurred no liability as an insurer. The statute insures "trust funds." When the bank breached the contract of bailment by converting the bonds and receiving money in exchange, did the defendant become an insurer of the proceeds? We do not think so. Authorities need not be cited for the principle that where a person wrongfully disposes of the property of another, knowing that the disposition is wrongful, and acquires in exchange other property,

equity without any actual or presumed intention of the parties imposes a trust. These are termed constructive trusts and are remedial in character. Beatty v. Guggenheim Exploration Company, 225 N. Y. 380, 122 N. E. 378; Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1; see also "The Progress of the Law, Equity," 33 Harvard Law Review, 420. And as stated in "Restatement of the Law, Restitution," § 160, p. 641:

"The term 'constructive trust' is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite different from an express trust. An express trust and the constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment. A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust may or may not involve a fiduciary relation.

"It is true that both in the case of an express trust and in that of a constructive trust one person holds the title to property subject to an equitable duty to hold the property for or to convey it to another, and the latter has in each case some kind of an equitable interest in the property. In other respects, however, there is little resemblance between the two relationships. An attempt to define a trust in such a way as to include constructive trusts as well as express trusts is futile, since a single definition which would include such distinct ideas would be so general as to be useless. A constructive trust differs from an express trust in much the same way as a quasi-contractual obligation differs from a contractual obligation. On the other hand, a quasi-contractual obligation and a constructive trust closely resemble each other, the chief difference being that the plaintiff in bringing an action to enforce a quasi-contractual obligation seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money, whereas

the plaintiff in bringing a suit to enforce a constructive trust seeks to recover specific property."

■ Construing the statute in its entirety, we conclude that it has reference to funds entrusted to an insured bank and does not include property acquired under circumstances justifying the decreeing of a constructive trust.

■ But it is further contended by plaintiff that if defendant is not obligated as an insurer to pay the claim set forth in his third cause of action as trust funds, the transaction was fraudulent in its inception and the deposit without deduction continued as an insured deposit. It appears from the stipulated facts that plaintiff issued a check to the bank on September 12, 1935, to pay for bonds, and that plaintiff's account was charged with the amount of the check. Plaintiff alleges and the parties agree by stipulation that plaintiff purchased these bonds and that a receipt for the bonds was issued by the bank acknowledging possession and agreeing to hold the bonds for safekeeping. We cannot agree with the conclusion that there was no alteration of the creditor and debtor relationship between plaintiff and the bank. The case of Blakey v. Brinson, 285 U. S. 531, 52 S. Ct. 312, 76 L. Ed. 926; Id., 286 U. S. 254, 52 S. Ct. 516, 518, 76 L. Ed. 1089, 82 A.L.R. 1288, relied on by plaintiff, we think is distinguishable from the case at bar. In that case a depositor desired to purchase bonds and the bank agreed to obtain the bonds for him. A few days later the bank furnished the depositor with a charge slip stating that it had charged his account with the items therein appearing including the purchase price of the bonds. The account of the depositor was debited for the purported purchase price of the bonds and a like amount was credited to the bond account in the bank. It was discovered after the closing of the bank that the bonds had not been purchased, ordered or received for the depositor. The court said: "The debit entry may be disregarded because respondent's assent to it was procured by a false statement; but the only consequence is that his status as a creditor is unaffected." Bonds were actually purchased in the instant case for plaintiff. The purchase transaction was completed. The record evidences no basis for the con-

clusion that the relationship of debtor and creditor was not altered.

The judgment appealed from is reversed and the cause remanded with instructions to proceed in accordance with the views expressed herein.

WARREN, P.J., and RUDOLPH and SMITH, JJ., concur.

POLLEY, J., dissents.