## AMERICAN SUGAR REFINING CO. v. ANDERSON.

### No. 7975.

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1939.

Leo T. Wolford, of Louisville, Ky. (Wm. Marshall Bullitt, Leo T. Wolford, Eugene B. Cochran, and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood and Robert S. Marx, both of Cincinnati, Ohio, Edward P. Humphrey, of Louisville, Ky., Harry Kasfir and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, and Humphrey & Taylor, of Louisville, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a judgment overruling a preferential claim by the appellant against the receiver of a closed national bank on the ground that the debt arose out of a relationship of debtor and

creditor and not of principal and agent or trustee and cestui que trust.

Prior to 1919 the Sugar Company regularly sent, for collection, to the American Southern National Bank of Louisville, all checks drawn to its order by persons in the vicinity of Louisville. The arrangement was substantially continued after the bank had been merged with others into the National Bank of Kentucky. Whatever may have been the legal consequences of the original arrangement and the actual practice followed in the handling of the Sugar Company's collection items, shortly after the merger, modification followed by a changed practice, grew out of the correspondence of record between the Sugar Company and the bank.

The bank had been remitting weekly to the Sugar Company for all collected items sent to it for collection, and absorbing collection costs, the consideration for which was undoubtedly a $10,000 deposit maintained by the Sugar Company with the bank not subject to check. On February 26, 1919, the Sugar Company wrote to the bank advising it that, under existing conditions in the raw sugar market, it was being frequently called upon for large sums of money in settlement for sugar and customs duties, and that it would be of some service to it if the bank could make remittance of collected items twice a week instead of once, suggesting remittances at the close of business on Tuesday and Friday of each week. To this the bank replied on February 28, 1919, its communication containing the following:

"In order that we might give you prompt returns on the items, it has been the custom for the checks to be entered for collection, and forwarded direct to their destination for remittance to us, which was then credited to your account. In this manner it was, of course, necessary for us to absorb considerable exchange cost on the out-of-town checks which certainly must have averaged 75c per thousand. This statement is not to be construed as a criticism or any dissatisfaction, on our part, but simply as a matter of information in your office, and it is given in the belief that you may be able to permit a reasonable change in the future, and which we believe will prove mutually advantageous.

"Under the present Federal Reserve system it will be possible for us to collect most of your checks, at par, and payment will, in many cases, be received more quickly than now, for the reason that sometimes our collecting bank [s] hold the collections instead of remitting on date of receipt.

"The head of our collection department states that over a period of five years, there has not been one of your checks, sent us for collection, returned unpaid, which prompts us to offer the following suggestion: Instruct us to credit your account on date of receipt, of all checks, at which time, advice will be mailed, and allow us to route in the most economical way. The funds to your credit in excess of $10,000.00, being subject to your check, at all times, and in the event, that one of the items should be returned unpaid, we could either charge to your account, and return to you, or else hold it unpaid, for your instructions. To us, this would be a very desirable arrangement, but if it does not appeal to you, we would be glad to hear from you further, and certainly will make every effort to meet your views."

To the bank's suggestion the Sugar Company replied on March 4, 1919, as follows:

"We can see no objection to the plan outlined in your letter except as to holding the balance over $10,000.00 subject to check; we would prefer you to make remittance.

"As we understand it, with this amendment, the arrangement would be as follows:

"You to credit our account, at par, on date of receipt of all items forwarded to you (it being, of course, understood that we are to stand behind any check sent you for collection, and in the event of its nonpayment for you to charge it back to us under the customary advice, when the amount involved could be deducted from your next remittance to us), acknowledgment of such receipt to be continued as is presently the case, i. e., returning to us the carbon copy of our remittance sheet with your acknowledgment thereon, our Cashier being required to have a full record; you to use your own best judgment as to the route of collection; remittances to be made to us semiweekly—say on Tuesdays and Fridays, of all amounts to our credit over and above $10,000.00, which amount is to remain as a standing balance, as is the case at present."

To this, on March 6, 1919, the bank made acknowledgment and replied:

"We very much appreciate your willingness to meet our views in this matter, and in accordance with your request, remittance in excess of $10,000.00 will be made on your account each Tuesday and Friday.

"All checks received from you will be credited to your account upon date of receipt and routed by us in the most advantageous way, in order to save cost of collection. However, in any event, the cost of collection will be assumed by us. * * *

"We shall continue as outlined above unless instructed by you to the contrary."

The practice followed by the bank and Sugar Company after this correspondence took place, was in response to the arrangement indicated in the several communications. Twice weekly the bank remitted, by draft, to the Sugar Company, the amount standing to its credit with the bank in excess of $10,000, whether collected or not. Many of its drafts covered items not yet collected, and to this practice no objection was made. The Sugar Company's letters transmitting checks were accompanied by duplicate schedules of the transmitted items, uniformly containing the instruction "kindly sign and return carbon copy and make remittance of items as customary". Not only did the books of the bank show credits to the Sugar Company for all checks as received, but the books of the Sugar Company likewise reflected these credits and contained no entries to indicate a trust or agency relationship in respect to the transmitted checks.

On November 15, 1930, the National Bank of Kentucky closed its doors and was put in charge of a receiver appointed by the Comptroller of the Currency, the original receiver being later succeeded by the appellee. When the bank closed, the Sugar Company was in possession of a draft for $27,000 sent to it on November 12, and another for $31,000 sent to it on November 15. These drafts included all sums standing to the credit of the Sugar Company upon the books of the bank in excess of $10,000, and represented many items not yet collected by the bank. The drafts were, and have remained unpaid. An additional debt of the bank to the Sugar Company approximately in the sum of $24,000, includes items received by the bank subsequent to its last remittance and collected by the receiver after the closing of the bank.

To the petition of the Sugar Company that the amount represented by the two drafts and the sums collected by the receiver (reduced by adjustments not presently important), be declared a preferential claim against the assets of the bank in the hands of the receiver, the latter defends on the ground that the Sugar Company was but a general creditor of the bank and entitled to no more than the dividends received by creditors generally, and also if it be established that there was no debtor-creditor relationship, on the ground that the evidence fails to show that the Sugar Company checks, other than those collected by the receiver, augmented the funds of the bank or that their avails are traceable into the hands of the receiver. It is perhaps, needless to say that if there is no substantial evidence to demonstrate a trust or agency agreement between the Sugar Company and the bank, the latter defenses need be given no consideration.

In Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203, we had occasion to consider the distinction between general deposits and such special deposits as arise out of transactions in which the bank becomes, by contract or operation of law, the agent of or the trustee for the depositor. We found the general rule to be that deposits are presumed to be general, and that those claiming to have made a special deposit have a heavy burden in proving the deposit to be a trust, that it augmented the bank's funds or in tracing it into the possession of the receiver, all doubts being resolved against special interests or preferred claims. The Supreme Court has made clear exposition of the philosophy that underlies the provisions of the National Banking Act, 12 U. S.C.A. § 21 et seq., in Texas & Pacific Ry. v. Pottoroff, 291 U.S. 245, 255, 54 S.Ct. 416, 78 L.Ed. 777. It is designed, in case of disaster, to insure uniformity in the treatment of depositors and a ratable distribution of assets—the policy of equal treatment having been held to preclude even the preference which, under statutes, is otherwise accorded to the United States when its debtor becomes insolvent. The legitimate expectations of the great body of depositors are defeated and confidence in the fairness of the National Banking

Laws and their administration is impaired when one or more depositors are preferred over the generality. Since the decision in Keyes v. Paducah & I. R. Co., supra, we have, in a number of cases, had occasion to consider cognate problems and the trend of decisions in other courts, without change of view. Ogdin v. Goodwin, 6 Cir., 76 F.2d 196; Scott County, Tenn., v. Kent, 6 Cir., 97 F.2d 971, among other cases. The more recent decisions of the Supreme Court confirm our confidence in the soundness of our reasoning. City of Douglas v. Federal Reserve Bank of Dallas, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051; Blakey, Receiver v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288.

We have no occasion to decide whether prior to 1919, and prior to the correspondence herein set forth, the relationship of the bank to the Sugar Company was that of depositor or that of an agent or trustee. It appears with great clarity, from the communications between the parties, that a new arrangement was then made by which all items sent by the Sugar Company to the bank were immediately credited to the Sugar Company's account upon the books of the bank, and that upon the semi-weekly remittance days the bank's draft was forwarded to the Sugar Company in sum to cover all credits in excess of $10,000 whether representing items collected by the bank or not. It is needless to argue that the bank may not by its unilateral action convert a special deposit into one that is general. Whatever was done by the bank in respect to the Sugar Company's collections was in response to an agreement clearly expressed. It may be conceded, arguendo, that the mere crediting of collection items by the bank to the Sugar Company upon receipt of checks, would not of itself create the debtor-creditor relationship, since such practice might constitute merely a convenient bookkeeping method of handling the accounts. The transmittal of drafts, however, covering these credits and their acceptance without objection by the Sugar Company with complete understanding that they include uncollected items, may not be so lightly disposed of. Were there any doubt as to the meaning of the contract disclosed by the correspondence, though we think there is none, this practical construction by the parties would completely resolve it.

It is of no moment that prior to the 1919 arrangement the express instructions of the Sugar Company to the bank were to collect and remit, and of no moment even if similar instructions were subsequently given, in view of what was done with the full knowledge of each of the parties. Nor is the refusal of the Sugar Company to check against credits for uncollected items of any importance in arriving at decision. Whether it preferred to draw upon its account by check or to have the bank remit by draft, is wholly immaterial. The inefficacy of a check to withdraw a savings deposit does not make it special or destroy the debtor and creditor relationship. It was doubtless of advantage in time saving for the Sugar Company to receive New York exchange instead of checking against its account. The reservation by the bank, that uncollected items might be charged back to the account, but conforms to the general usage of the banking business, and does not indicate an agency relationship. City of Douglas v. Federal Reserve Bank of Dallas, supra; Ogdin v. Goodwin, supra.

Were we to hold that the agreement, evidenced by the correspondence and as practically construed by the parties, failed to create a debtor-creditor relationship as soon as collection items were received and credited, we might still be required to affirm the judgment in deference to the cases which hold that the avails of collection made by a bank as the agent of its customer, becomes a general deposit when they are, by permission of the principal, placed to the latter's credit in the bank, and to those cases which hold that where the principal of an agent bank directs avails of collections to be put in the form of a draft, he then becomes a general creditor of the bank to the extent of the credit he has purchased, whatever may have been the prior relationship between them. Spurway v. Frick Co., 5 Cir., 63 F.2d 875; Douglas v. Federal Reserve Bank of Dallas, supra; Bassett v. City Bank & Trust Co., 115 Conn. 1, 160 A. 60, 81 A.L.R. 1488; Standard Oil Company of New Jersey v. Elliott, 4 Cir., 80 F.2d 158; Akin, Trustee, v. Jones, 93 Tenn. 353, 27 S.W. 669, 25 L.R.A. 523, 42 Am.St.Rep. 921; Reichert v. American State Savings Bank, 264 Mich. 366, 249 N.W. 876, 89 A.L.R. 1284; Pecos County State Bank v. Lynch, 5 Cir., 69 F.2d 226, although the latter questions we are not required to decide. In view

of what we have said it becomes clear, as earlier suggested, that we need not determine remaining issues.

The judgment is affirmed.